FORD *v.* FORD.

1. GIFTS—INTENT—EVIDENCE—BANK DEPOSIT.

In suit to determine ownership of fund on deposit in a savings account, testimony of bank official with whom depositor, now deceased, had negotiations *held*, to establish intent on her part to make a gift to two minor grandchildren.

2. SAME—INTER VIVOS—DELIVERY—POSSESSION—RESERVATION OF INCOME.

In the application of the rule that to effectuate a gift *inter vivos* there must be an unconditional delivery either to the donee direct or to someone for him, and the right of disposition must be wholly beyond the power of the donor, the gift is not defeated by the fact that the donor retains possession of the same for any purpose nor by his reservation to himself of the use or income.

3. SAME—SAVINGS BANK DEPOSIT—RESERVATION OF INTEREST.

Valid gift *inter vivos* to two minor grandchildren of savings bank depositor *held*, effectuated, where bank accepted deposit subject to terms that donees receive it after her death and when they respectively became 21 years old, and although she surrendered all control over it, she reserved the option to receive interest.

Appeal from Lenawee; Rathbun (G. Arthur), J. Submitted February 5, 1935. (Docket No. 61, Calendar No. 38,180.) Decided March 5, 1935.

Bill by Gilbert D. Ford and Nancy S. Ford by her guardian, William P. Rogers, against Dorrance Ford, Jay L. Ford, Ivey L. Taylor, and Jipson-Carter State Bank to have a writing appearing on a bank book construed as constituting a gift *inter vivos* and for other relief. Cross-bill by Dorrance Ford against plaintiffs and other defendants for

possession of the fund. Decree for defendant Dorrance Ford. Plaintiffs appeal. Reversed and decree ordered entered for plaintiffs.

*Clark & Bean,* for plaintiffs.

*William B. Alexander* and *Clarke W. Baldwin,* for defendant Dorrance Ford.

Nelson Sharpe, J. Nancy Ford, a widow, a resident of the county of Lenawee, had three children, two sons, Dorrance and Jay L., and a daughter, Ivey L., married to a man named Taylor. In 1917 she was possessed of $13,000 in money. She deposited $4,000 in a bank and received a certificate therefor, payable to herself and her son Jay L., or the survivor of them. She made a similar deposit and received a certificate, payable to herself and her daughter, Ivey, or the survivor of them. She also deposited $1,000 and received a certificate therefor, payable to herself and her three children, naming them, or the survivor of them. On February 24, 1917, she went to the Jipson-Carter State Bank, taking $4,000 with her. Charles L. King, the first vice-president of the bank at that time, testified:

"She said 'I want to give to my grandchildren $4,000.' First she said 'I am dividing up my estate in various ways, and I want to give to my grandchildren,' naming them as they are named here, '$4,000. I want to receive the interest from that money during my lifetime if I see fit to draw it, and if there is any interest accumulated that hasn't been drawn on this it shall be added to the principal. And you,' this bank, 'is to pay to Gilbert Ford, my grandson, and to Nancy Ford, my granddaughter, the amount due in the book at the time they are 21 years of age,

the principal sum of $4,000, together with what interest—accumulated interest may be added to it.'
\* \* \*

''She said the reason that she wanted to give this sum to the grandchildren named here was because she felt that they, when they became 21 years of age, that they would make good use of the money, and that she felt that if it went into some other source it would do—it wouldn't do anyone—but very little good. She wanted it to go to the children here where they would receive the good from it. \* \* \*

''She certainly told me she was giving it to them at that time and put it up in this way. We weren't to pay it to them until they were 21, until they—
\* \* \*

''She said this: 'I want to deposit $4,000 in your bank for these two children. I want you to hold this money until they are 21, and give each one of them half of it. During the time of my life I will draw the interest. If there is any interest unpaid when they are 21 it shall be added to the principal and be divided equally.' That's what Mrs. Nancy Ford said. \* \* \*

''She said she had made disposition of other of her property at or near that time. She said she was making a distribution of her property at that time so there would be no need of an administrator after her death. After her death, there never was any administrator to my knowledge.''

That as a result of what she told him he accepted the deposit, placed it in the savings account, and gave her a pass-book therefor, on which he wrote:

''In case of the death of said Nancy Ford this sum with any interest that may be unpaid, shall be paid to my grandson, Gilbert Ford, and my granddaughter, Nancy Ford, in equal sums.

''In case of the death of either Gilbert Ford or Nancy Ford the balance shall be paid to the survivor.

"In either case the sum shall not be paid to the grandson or granddaughter until they are each 21 years of age.

"Interest payable annually four per cent."

Gilbert Ford and Nancy Ford named therein were at that time the minor children of her son Dorrance. She retained possession of the bank book and the certificates, and was paid a part or the whole of the interest thereon until her death in 1925. Soon thereafter, Jay and Mrs. Taylor cashed their certificates, and the one for $1,000 was also cashed and the proceeds divided among the three named therein. Mrs. Taylor, in whose possession the bank book then was, delivered it to Dorrance. Mrs. Ford's estate was not probated.

Gilbert became 21 years of age on May 20, 1933. He went to the bank on the next day to get his share of the money, and was told that he must produce his certificate of birth. He went to the county seat for one, but found no record of his birth in the clerk's office. On the 23d his father went with him to the bank, taking the family Bible with him, in which the births of the children had been recorded. While there, an attorney was called in and the sufficiency of the writing on the pass-book to create a gift was questioned, and no money was paid to him.

On June 23, 1933, he and his sister by her guardian filed the bill of complaint herein, in which they set up the writing on the bank book, claiming it should be construed as a gift to them. Dorrance in his answer claimed the fund belonged to him, and by cross-bill sought a decree so providing. The defendants Jay L. Ford and Ivey L. Taylor in their answer admitted that the money belonged to the plaintiffs. At the opening of the hearing, an order of dismissal was entered as to the defendant bank on the under-

standing that the fund would be left with it until the case was finally disposed of.

After the submission of the proofs, the trial court filed an opinion, in which he found that a gift to the plaintiffs was not established and that the fund belonged to the estate of the deceased. In a supplemental opinion he stated that, as Jay L. and Ivey L. disclaimed any interest in the fund in dispute, he felt justified in awarding it to Dorrance, and a decree so providing was entered, from which the plaintiffs have taken this appeal.

The testimony of Mr. King clearly establishes an intent on the part of Nancy Ford to make a gift to her two grandchildren of the sum of $4,000. She wanted the bank to hold the money, and pay one-half of it to each of them when they arrived at the age of 21 years. She wanted to reserve to herself the right to draw the interest as it matured, but any of it unpaid at her death should be added to the sum on deposit. The donation was accepted by Mr. King on behalf of the bank and the money placed in a savings account bearing interest at four per cent. per annum and a pass-book therefor delivered to her. As the children were then very young, the eldest being about five years of age, Mr. King very wisely thought it best to have the arrangement reduced to writing, and the memorandum above quoted was written on the pass-book and also in the records of the bank.

"To effectuate a gift *inter vivos,* there must be an unconditional delivery, either to the donee direct or to some one for him, and the right of disposition must be wholly beyond the power of the donor." *Chaddock* v. *Chaddock,* 134 Mich. 48, 50.

The only conditions attached to the delivery of the money to the bank was that the donor reserved the

right to draw the interest upon it and that it was not payable until after her death. In *Shepard* v. *Shepard,* 164 Mich. 183, after stating the rule as above, this court said (201):

"In the application of this rule, it is well settled that if there has been an actual or constructive delivery of the subject-matter of the gifts, with the intent to vest title, the fact that the donor retains possession of the same for any purpose is not sufficient to defeat the gift; nor is the gift defeated by the fact that the donor reserved to himself the use or income from the subject-matter of the gift."

In *Clough* v. *First National Bank of Paw Paw,* 254 Mich. 298, certain bonds were delivered by John B. Shered to the defendant bank "to be, at his death, delivered to Marvel and Marvin Shered." It was there said (302):

"The intention of the donor to make these gifts to his great grandchildren is clear and unmistakable. The delivery was sufficient to support the gifts. The bonds were not registered and were transferable by delivery. Delivery to the bank passed a present title to the donees, and the fact that possession was postponed until the donor's death did not make the transaction testamentary in character. The circuit judge was correct in holding the gifts valid."

The record discloses that Nancy Ford, now deceased, took $4,000 in money to the bank for the purpose of depositing it in such a way that her grandchildren should receive it after her death and when they respectively arrived at the age of 21 years; that she surrendered all control over it, reserving, however, the right to receive the interest on it if she needed it, and that the bank accepted it as a savings deposit on the terms stated by her, and, to avoid any

question that might thereafter arise, wrote the memorandum which appears in the bank book and a similar one in the records. In our opinion, a valid gift *inter vivos* was thereby effectuated.

As the record does not disclose that there was any interest on the fund past due at the date of the death of Nancy Ford, we do not consider, or decide, whether, if there had been, it would pass to the donees or belong to the estate.

The decree appealed from is reversed and set aside, without costs, and one may be here entered as prayed for in the bill of complaint.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.