[No. 28413. *En Banc.* June 12, 1942.]

THE OLD NATIONAL BANK & UNION TRUST COMPANY, *as Administrator, Appellant,* v. FAY KENDALL, *Respondent.*[1]

[1] Reported in 126 P. (2d) 603.

20

*Edge, Keith & dePender,* for appellant.

*Richard S. Munter,* for respondent.

DRIVER, J.—The plaintiff, as administrator with the will annexed of the estate of Fay Kendall, deceased, brought this action against the Seattle-First National Bank and Fay Kendall, a minor, to recover the balance of a savings account in the defendant bank. The minor, appearing by her guardian *ad litem,* answered, asserting sole ownership of the account. Defendant bank, by its answer and cross-complaint, disclaimed all interest in the fund, and deposited it with the clerk of the court. A trial to the court resulted in a judgment in favor of the minor, and plaintiff appealed. The judgment dismissed the action as to defendant bank, and it is not a party to the appeal.

The question presented is whether the minor respondent acquired the savings account by gift *inter vivos.* There is no material conflict in the evidence. The de-

cedent, Fay Kendall, adopted respondent, her niece, when the latter was "just a little tot." When the adoptive mother married Homer B. Kendall in 1934, he also joined in legally adopting the respondent. Mrs. Kendall's first husband, who was a wealthy man, had created a trust, from which she received, after his death and during her lifetime, an income of approximately nine thousand dollars a year. All of the deposits in the bank account in controversy were made from funds which Mrs. Kendall received from this trust. The record does not definitely show the amount of Mr. Kendall's income. He testified, however, that it was substantially in excess of three thousand dollars a year.

On June 24, 1939, when respondent was sixteen years of age, Mrs. Kendall took her to defendant bank and opened a savings account in the names of "Fay Kendall or Mrs. Fay Kendall." Each of them signed the signature card and the ledger sheet. On the face of the former, in blank spaces provided for that purpose below the signatures, respondent wrote the address, telephone number, and occupation both of herself and her mother. On the back of the card, there is a printed form of agreement acknowledging the interest of each depositor to be several as well as joint in the whole account, and specifying that the death of either of them shall not affect the right of the other to withdraw the entire deposit. This agreement was not signed. Respondent testified that it had not been called to the attention of herself or of Mrs. Kendall. The bank's savings teller, who opened the account, had no independent recollection of the transaction. A savings account passbook, in the usual form, was issued by the bank. It contained the printed provision that "This book must be presented when money is deposited or withdrawn."

Respondent testified that, when they got home from the bank, Mrs. Kendall gave her the passbook, and she put it in a dresser drawer in her own room. She kept it there at all times prior to Mrs. Kendall's death except when deposits or withdrawals were made, as hereinafter noted.

Mrs. Kendall died by drowning in October, 1939. The savings account ledger sheet of the bank shows that, prior to her death, deposits and withdrawals had been made as follows:

| Withdrawals | Deposits-Interest | Date |
|---|---|---|
| | 693.00 | Jun 24 '39 |
| | 850.03 | Jul 28 '39 |
| 100.00 – | | Aug 3 '39 |
| 100.00 – | | Sep 9 '39 |
| 143.00 – | | Sep 20 '39 |
| | 746.92 | Oct 19 '39 |

According to her own testimony, respondent made the deposits of July 28th and October 19th. On each of those occasions, Mrs. Kendall, as payee, indorsed a check which she had received from the trust established by her former husband and gave it to respondent, who took it to the bank, with the passbook, and deposited it in the account. The first of the three withdrawals was made by respondent. She took the passbook to the bank, drew out the money and gave it to her mother for the latter's use. When each of the other two withdrawals was made, Mrs. Kendall had asked her for the book, and respondent gave it to her. Mrs. Kendall then went to the bank, drew out the money, and thereafter, on the same day, returned the passbook to respondent, who put it back in her bureau drawer—to her knowledge, Mrs. Kendall did not know

where the passbook was kept. Respondent did not know, she said, what her mother did with the money.

A friend and neighbor of the Kendalls' testified that, in the early summer of 1939, Mrs. Kendall told her

" . . . that she had been to the bank and had given—put some money in the bank to give to Fay [respondent], and that was all she said. She was in a hurry and we talked for a very few minutes, and she said she felt badly that she hadn't done it before, but she was going to start out by giving—putting this money in the bank for Fay, and then she would eventually put more in—that that is some way of seeing that Fay had money."

The same witness testified that, shortly after Mrs. Kendall's death, she had been at the Kendall home, and respondent had then shown her a little bank deposit book which she had taken from the dressing table drawer in her bedroom.

Homer B. Kendall testified that, around the first of July, 1939, he had had a talk with his wife in which "She explained that she had opened a savings account in both of their names with some money for Fay [respondent]; *that this money was intended as a gift for Fay.*" (Italics ours.) On cross-examination, Mr. Kendall stated: "We had discussed putting something away for little Fay for a good many years, and she [Mrs. Kendall] happened to mention she had opened a savings account for her [respondent] with her money and given her [respondent] the book." He also testified that, in the early part of November, 1939, respondent had shown him the bank passbook in her room— "in fact, offered it to me," and that she got it out of her dressing table.

By her will, Mrs. Kendall gave all her property to her mother, but provided that, in the event her mother should predecease her, the respondent would be the

sole beneficiary. The mother testified that Mrs. Kendall had often said she was setting aside money to provide a home for her, the mother, in Spokane. This testimony was corroborated by Mrs. Kendall's father. Neither of these witnesses claimed, however, that Mrs. Kendall had ever mentioned specifically the savings account in the Seattle-First National Bank.

■ The essential elements of a valid gift of personal property are: (a) An intention on the part of the donor to presently give; (b) a subject matter capable of passing by delivery; and (c) an actual delivery at the time. *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204; *Wolfe v. Hoefke,* 124 Wash. 495, 214 Pac. 1047; *In re McCoy's Estate,* 189 Wash. 103, 63 P. (2d) 522; *Decker v. Fowler,* 199 Wash. 549, 92 P. (2d) 254, 131 A. L. R. 961. In the *Slocum* case, p. 161, the court said that

"The delivery must be such as will divest the donor of the present control and dominion over the property absolutely and irrevocably and confer upon the donee the dominion and control. . . . A gift will not be presumed, but he who asserts title by this means must prove it by evidence which is clear, convincing, strong and satisfactory."

In orally announcing its decision at the close of the testimony, the trial court said:

"Now I think unquestionably there has been established by the evidence and by the circumstances that have been introduced here an intent to make a gift to this girl. It is wholly natural and logical in every wise, and is supported by the degree of testimony that our Supreme Court has indicated should obtain in a case of the establishment of a gift—that it was by clear and by satisfactory testimony."

■ The record, we think, supports the trial court's view. It was clearly established that Mrs. Kendall intended to make a present gift of the savings account

to her daughter. Our question, then, may be narrowed to this: Was there a sufficient delivery to constitute a valid gift?

It is not necessary that there be an actual, manual handing over of the subject matter of a gift. Constructive or symbolic delivery may be sufficient. In *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003, this court said:

"The subject-matter of the gift, if there were a gift, was the right to withdraw or recover the money on deposit with the bank. In order to constitute a gift, it is necessary that there be a delivery, actual, constructive or symbolical, which will pass the dominion and control of the subject-matter from the donor to the donee."

There are extensive annotations in 40 A. L. R. 1249 and 84 A. L. R. 558, entitled "Gift of savings deposit by delivery of pass book." Under subdivision III-a-1 (earlier annotation, p. 1257; later one, p. 563), this general rule is stated: "A valid gift inter vivos may be made of a savings deposit by delivery of the pass book to the donee, . . ." The two annotations cite a great number of cases from fourteen different states in support of the rule. No case from this state is cited, and none have been called to our attention, involving application of the rule.

Appellant's counsel contend that the making of withdrawals from the savings account by Mrs. Kendall indicated that she retained control of it, and, in this connection, they call our attention to the following statement appearing on page 1261 of the above-mentioned annotation in 40 A. L. R.:

"Although a savings deposit pass book is delivered to the donee with statements indicating an intention to give the deposit represented, there is no valid gift inter vivos of the deposit if the donor retains control over the disposition of the deposit; there must be not

only donative intent, but complete stripping of the donor of all dominion or control over the money."

In support of the text, three cases are cited (the supplemental annotation notes that there are no later decisions on this point—see 84 A. L. R. 565). All of them are distinguishable from the instant case. None involve a savings deposit made unconditionally in the names of both the alleged donor and the donee, as it was made here; and, in each of them, it was clearly indicated by declarations of the donor, or by the circumstances of the deposit, that the transfer of the fund was not intended to take effect at once, but was to become operative only upon the death of the donor.

On the other hand, the following cases support respondent's position that there was a legally sufficient and consummated delivery of the subject matter of the gift:

In *Earnest v. Earnest,* 26 Ala. App. 260, 157 So. 885, the parents of an unmarried daughter deposited a sum of money in a bank and took a certificate of deposit in the name of, and delivered it to, the daughter. The certificate was renewed periodically, and the later ones were made payable to the daughter or the father. The parents at different times drew and used the interest and a part of the principal of the deposit. After both of them had died, a controversy arose as to the ownership of the fund, and it was held that there had been a valid gift to the daughter. The court said:

"As we view the evidence in this case, the gift of the money in the bank took place and was fully consummated when R. M. and Selina deposited the money to the credit of Mary Susan in November, 1915, obtaining a certificate therefor which authorized payment to Mary Susan only; the certificate being then and there delivered to this plaintiff. Certainly R. M. then and there lost all control over the deposit, except such as he might obtain from the donee as a mere gratuity.

The fact that after that time the interest was drawn out periodically by R. M. and used in and about the expenses incident to the living of father, mother, and daughter was a concession on the part of this plaintiff, which in no way militated against her title and ownership. The fact also that at one time she allowed $200 to be used in the payment of taxes and that these transactions were conducted by her father for her falls within the same category."

*Raferty v. Reilly*, 41 R. I. 47, 102 Atl. 711, involved a bank deposit represented by a certificate of deposit "payable to the order of John Henry or Edward Reilly or the survivor." Henry had made the deposit from an inheritance of four thousand dollars he had received after he had been supported for a number of years by his friend Reilly. The certificate was delivered to Reilly and remained in his possession. From time to time withdrawals were made from the deposit, $1,885 being paid to Reilly and $740 to Henry. The bank rules required that the certificate be presented at the time of any withdrawal, and, accordingly, each time the money was drawn out for Henry's benefit, Reilly went to the bank with him and produced the certificate so that indorsement of payment could be made thereon. The supreme court of Rhode Island, holding that a gift of an interest in the fund had been made, said:

"This certificate with the consent of Henry was delivered to Reilly and was retained by him until after the death of Henry, thus giving to Reilly complete dominion over the deposit and, during the life of Henry, Reilly frequently exercised this dominion and made withdrawals from the deposit. It is true that he used most of the money withdrawn for the benefit of Henry, but there is nothing to show that such conduct arose from the recognition of a legal obligation on his part rather than from a continuance of the regard for Henry's welfare which Reilly had shown for years before the making of the deposit."

The following cases, although they are factually dissimilar to the case at bar, may be said to lend support to the proposition that withdrawals of principal or interest by the donor, for his own use, from a fund on deposit in a bank do not necessarily defeat an otherwise legally sufficient gift of such fund previously made. *Batal v. Buss,* 293 Mass. 329, 199 N. E. 750; *Ford v. Ford,* 270 Mich. 487, 259 N. W. 138.

In the instant case, the regulations of the bank, as set out in the passbook, provide that no money may be withdrawn from the savings account without presentment of the book. The book symbolizes the account. When Mrs. Kendall, with donative design and with the intention of making a presently effective transfer, handed the book to the respondent, a co-depositor named therein, to be thenceforth kept in her sole possession and under her exclusive control, a valid gift of the account was accomplished. The mother did not thereafter take possession or control of the book as a matter of right. Each time a withdrawal was made, she requested the book of the daughter, and the latter granted the request—a perfectly normal and natural thing for a daughter to do under the circumstances—and, on each of such occasions, after the withdrawal had been made, the book was promptly returned to the respondent. The amount withdrawn each time was relatively small and unimportant. Within a period of four months, a total of $2,289.95 had been deposited in the account, and, during the same time, only $343 was withdrawn.

Under the circumstances, the making of the withdrawals was consistent with the donor's purpose to confer upon the respondent dominion and control

over the passbook, and it was not sufficient to defeat a gift previously consummated by sufficient delivery and with the requisite donative intent.

Appellant has also assigned as error the trial court's rejection of certain offers of proof, but we regard the assignment as devoid of substantial merit.

Judgment affirmed.

MAIN, BEALS, MILLARD, SIMPSON, BLAKE, and JEFFERS, JJ., concur.

STEINERT, J. (dissenting)—I am in accord with the legal principles stated in the majority opinion, but I cannot agree that they have been correctly applied in this case.

As stated in the opinion of the majority, the essential elements of a valid gift of personal property are: (a) an intention on the part of the donor to *presently* give; (b) a subject matter capable of passing by delivery; and (c) an actual delivery at the time. In this case, it may be conceded that the subject matter, namely, the savings account, was capable of passing by delivery. But I do not believe that the evidence established either an intention on the part of Mrs. Kendall to *presently* give to her daughter the fund represented by the savings account, or that there was ever any actual, or even constructive, delivery thereof to the daughter. Had the mother intended to give the money *presently* to the daughter, she could easily have accomplished that purpose by opening the account directly in the name of the daughter and having the daughter take immediate possession of the passbook from the bank. But she did not do that. On the contrary, she opened the account in the name of "Fay Kendall [the daughter] or Mrs. Fay Kendall [the

mother]." She could also have made the fund payable to either of the designated parties and to the survivor of them, which is sanctioned by the law of this state and was permissible under the rules and regulations of the bank, as is evidenced by the written provisions on the reverse side of the signature card. Had she done that, the fund would now undoubtedly belong to the daughter. But that method likewise was not adopted.

The rule in this state, in such cases, is, as stated in *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204, that

"The delivery must be such as will divest the donor of the present control and dominion over the property absolutely and irrevocably and confer upon the donee the dominion and control. . . . A gift will not be presumed, but he who asserts title by this means must prove it by evidence which is clear, convincing, strong and satisfactory."

That Mrs. Kendall did not divest herself of the present control and dominion over the savings account absolutely and irrevocably, and that the daughter Fay did not acquire such dominion and control, are manifest not only from the character of the account itself, but particularly from the manner in which the parties concerned afterwards dealt with the account. Three withdrawals, totalling three hundred forty-three dollars, were made within four months after the account was opened. Two of these withdrawals were made directly by Mrs. Kendall, and the third, although made by the daughter, was at the instance of Mrs. Kendall. The proceeds of each of the withdrawals were retained by Mrs. Kendall and used for her own purposes. The mere fact that the passbook was turned over to, and was kept by, the daughter is, in my opinion, an inconsequential factor and nowise refutes the more important fact that the mother continued to

exercise at least a joint, if not a complete, dominion and control over the fund.

So far from proving title to the property in the daughter by evidence that was "clear, cogent, convincing, strong, and satisfactory," it seems to me that the respondent has definitely established the fact that Mrs. Kendall never wholly or irrevocably divested herself of dominion or control over the savings account, from which it follows that one of the vital elements necessary to effective delivery is lacking. If it be a matter of intention, I think the intention of the parties is best shown by their acts.

Two cases in particular are relied upon to support the majority's conclusion: *Earnest v. Earnest,* 26 Ala. App. 260, 157 So. 885, and *Raferty v. Reilly,* 41 R. I. 47, 102 Atl. 711. Neither of those cases is, in my opinion, controlling here. In the *Earnest* case, a certificate of deposit had been taken out by the parents *in the name of, and was delivered to, their daughter.* That was not what Mrs. Kendall did here. Moreover, in that case, it appears that the daughter had lived with and nourished her parents in their declining years, in respect to which the Alabama court said:

"Under this state of facts, less positive and unequivocal proof is required to establish the delivery of a gift from parent to child than as between persons not so related."

We have no such situation in the case at bar.

In the *Raferty* case, which also involved a certificate of deposit, the instrument was by its terms made payable to either of the two parties named therein, or *to the survivor,* and the instrument was at all times retained and held by the party who ultimately became the survivor.

I am not so much concerned about the result in this particular case, but I am of the belief that it estab-

lishes a precedent the effect of which will be to undermine the rule so frequently affirmed by this court in situations of this kind.  I therefore dissent.

ROBINSON, C. J., concurs with STEINERT, J.