76 P.3d 271 (2003)
118 Wash.App. 307
Lonnie BURTON; Gordon Lebar; James Bringham; and Michael Holmberg, individually and on behalf of a class of similarly situated individuals, Appellants,
v.
Joseph LEHMAN and Jane Doe Lehman, husband and wife; Doug Waddington and Jane Doe Waddington, husband and wife; Maggie Miller-Stout and John Doe Miller-Stout, husband and wife; Kathy Kaatz and John Doe Kaatz, husband and wife; Richard Morgan and Jane Doe Morgan, husband and wife; Patricia Gorman and John Doe Gorman, husband and wife; and Carol Porter and John Doe Porter; and John Doe and Jane Does 1 through 20, Respondents.
No. 29143-6-II.
Court of Appeals of Washington, Division 2.
September 9, 2003.
*272 Michael John Rasch, Thomas Juhl, Seattle, WA, for Appellants.
Douglas Wayne Carr, Atty General's Ofc, Olympia, WA, for Respondents.
SEINFELD, J.
Several prison inmates in the custody of the Washington State Department of Corrections (DOC) challenge a DOC rule requiring inmates to pay the cost of shipping certain personal property items when they are transferred from one correctional institution to another. The trial court dismissed their claims under Civil Rule 12(b)(6). Holding *273 that DOC's rule does not violate RCW 72.02.045(3), we affirm.

FACTS
Prison inmates Lonnie Burton, Gordon LeBar, James Bringham, and Michael Holmberg (appellants) brought this action against DOC, its secretary, several corrections centers, and their superintendents (respondents) for declaratory and injunctive relief and money damages. The appellants claimed that the respondents, by enacting and implementing DOC rule 440.000, violated RCW 72.02.045(3) and committed mail fraud, extortion, conspiracy, "collection of unlawful debt," "leading organized crime," "trafficking in stolen property," racketeering, and profiteering. Clerk's Papers (CP) at 25.
DOC rule 440.000 requires DOC inmates who are transferred from one DOC correctional institution to another DOC correctional institution to pay the cost of shipping certain personal property items, including televisions, musical instruments, stereo equipment, typewriters, hobby craft chemicals, hazardous materials, and all property that will not fit into two specified cartons. If the inmate fails to pay the shipment costs, DOC disposes of the property, either by donating it to a charitable organization or by destroying it.[1]
The trial court dismissed the appellants' claims under CR 12(b)(6), concluding that DOC rule 440.000 does not violate RCW 72.02.045(3), and that the appellants based all their other claims "on this alleged violation of the statute." Report of Proceedings at 31.

DISCUSSION
On appeal, the appellants again argue that DOC rule 440.000 violates RCW 72.02.045(3). They contend that the rule is inconsistent with the following statutory language:
When convicted persons are released from the confines of the institution either on parole, transfer, or discharge, all funds and valuable personal property in the possession of the superintendent belonging to such convicted persons shall be delivered to them.
RCW 72.02.045(3) (emphasis added).[2]
Statutory interpretation is a question of law that we review de novo. Berger v. *274 Sonneland, 144 Wash.2d 91, 104-05, 26 P.3d 257 (2001). Because plain words do not require construction, we do not construe an unambiguous statute. Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999). Instead, we derive the meaning from the wording of the statute itself. State v. Tili, 139 Wash.2d 107, 115, 985 P.2d 365 (1999).
But we must construe ambiguous language in a statute to effect the intent of the Legislature within the context of the entire statute. Davis, 137 Wash.2d at 963, 977 P.2d 554. A statute is ambiguous if it is susceptible of more than one meaning or reasonable interpretation. Washington Fed'n of State Employees v. State Pers. Bd., 54 Wash.App. 305, 309, 773 P.2d 421 (1989).
In construing a statute, it is necessary to give effect to all the statutory language so that no portion is rendered meaningless or superfluous. Davis, 137 Wash.2d at 963, 977 P.2d 554. Where possible, the court will harmonize provisions of an act to ensure proper construction of each provision and will try to avoid strained, unlikely, or unrealistic consequences. State v. Pesta, 87 Wash.App. 515, 521, 942 P.2d 1013 (1997).
The appellants argue that the word "transfer," as RCW 72.02.045(3) uses that term, is not ambiguous and clearly includes transfers from one DOC correctional institution to another. Thus, they reason that the statute requires that a convicted person's valuable personal property "shall be delivered to them" at the new institution. RCW 72.02.045(3).
The respondents treat the word "transfer" as ambiguous and would limit its meaning to the release "from DOC custody on transfer to another law enforcement or penal agency." Br. of Respondents at 3-4 (emphasis added). They contend that the legislature intended the statutory phrase: "When convicted persons are released from the confines of the institution ... on ... transfer"; to mean when inmates are "liberated" or "discharged" from DOC custody. RCW 72.02.045(3); Br. of Respondents at 4. Thus, under their construction, RCW 72.02.045(3) does not apply when a prison inmate is transferred to another institution under DOC's authority.
We agree with the appellants that the word "transfer" is not ambiguous as RCW 72.02.045(3) uses that term. The statute differentiates it from release on "parole" or "discharge," and the reference to transfer from the "confines of the institution" clearly suggests that the prison inmate is being moved from one correctional facility to another. But even assuming that the word is ambiguous, we find the respondent's construction to be strained and unrealistic.
The respondent's reading would require us to ignore the phrase, "from the confines of the institution," which follows the word "released." RCW 72.02.045(3). It would also require us to ignore the reference to the "superintendent" as the "custodian of... valuable personal property of convicted persons as may be in their possession upon admission to the institution." RCW 72.02.045(3). Generally, the respondents reading treats the word "institution" as synonymous with DOC, and the word "superintendent" as synonymous with the DOC *275 "secretary," thereby making the words institution and superintendent meaningless. RCW 72.02.045(3).
Not only does this construction violate the Davis court's rule that we are to render no portion of the statute meaningless, or superfluous, 137 Wash.2d at 963, 977 P.2d 554, it also makes the statute internally inconsistent and it is inconsistent with DOC's current practice. RCW 72.02.045 begins with a reference to the "superintendent of each institution." (emphasis added.) But under the logical extension of the respondent's construction, the secretary of DOC, rather than the superintendents of the individual correctional institutions, would be the custodian of property. And under this reading, there would be no requirement for the secretary (or the superintendent) to deliver personal property to a prison inmate until the inmate left DOC custody. Nor could the superintendent donate or destroy property belonging to an offender who is transferred from DOC. Given these flaws in the respondent's construction of the statute, we agree with appellant that the word "transfer" encompasses moves of a prison inmate from one DOC facility to another.
But our rejection of the respondent's construction of the word "transfer" does not end our inquiry. The more pertinent inquiry is what the legislature meant when it stated that all "valuable personal property ... shall be delivered to them." RCW 72.02.045(3).
Delivery may be actual or constructive. Henderson v. Tagg, 68 Wash.2d 188, 192, 412 P.2d 112 (1966); Old Nat'l Bank & Union Trust Co. v. Kendall, 14 Wash.2d 19, 25, 126 P.2d 603 (1942); see also BLACK'S LAW DICTIONARY, 7th Ed. at 440. And it does not necessarily involve a "manual transfer." Old Nat'l Bank, 14 Wash.2d at 25, 126 P.2d 603 (Delivery does not require "an actual, manual handing over of the subject matter."). Because the statute does not specify which kind of delivery is adequate, it is susceptible of more than one reasonable interpretation and is ambiguous. Washington Fed'n of State Employees, 54 Wash.App. at 309, 773 P.2d 421. Thus, we must apply rules of construction to determine its meaning.
The law makes the superintendent the custodian of the prison inmate's personal property. This suggests that the delivery of the inmate's possession is a constructive delivery. To maintain prison safety and discipline, the inmate is not entitled to have actual possession of his property, beyond that which the superintendent determines to be appropriate. See WAC[3] XXX-XX-XXX.
When an offender is transferred from one correctional institution to another, the superintendent must relinquish custodial control and give the inmate constructive possession to determine the fate of his property. At that point, DOC rule 440.000 gives the inmate the option of selecting some property to place in two boxes that DOC will transfer to the new institution as a courtesy. As to the balance, the inmate may arrange for its pickup by a non-incarcerated person,[4] or pay to ship it to the new institution or to a non-incarcerated person. But the choice is the inmates; RCW 72.02.045(3) does not allow the superintendent to make the decision. Under this construction, DOC rule 440.000 does not violate RCW 72.02.045(3).
Reading the statute as a whole supports our interpretation. Specifically, RCW 72.02.045(3) deals with the superintendent's custodial responsibility for an inmate's property, the limits of DOC liability for the property, and how that responsibility ends when the inmate leaves a State institution; the statute does not place a duty on DOC to pay for transporting the inmate's property to a new location.
Accordingly, we affirm.
We concur: HOUGHTON, J., and HUNT, C.J.
NOTES
[1] The relevant portion of DOC Policy 440.000, Section VIII, provides as follows:

A. All offender personal property will be inventoried and secured prior to transfer. Only authorized property will be transported/mailed/shipped to other Department facilities. Offender personal property not authorized shall be mailed/shipped to friends/family at the offender's expense, donated, or destroyed.
B. Offenders with personal property exceeding the amount authorized to be transported by the Department will identify the items that will be transported after the following requirements are met:
1. The amount of property that can be packed into two cartons that weigh no more than 25 pounds each and are 10"×12"×18". These cartons shall be clearly labeled using DOC 21-329 Label.
2. The following items must be shipped as part of the 2 box limit:
a. Medically-issued items (i.e., shoes, braces, supports, etc.);
b. Legal documents/papers needed to meet a court imposed deadline;
. . . .
c. Religious Sacred Items Box containing religious sacred items.
C. The following items will not be transported by the Department and must be shipped by common carrier at the offender's expense:
1. Televisions (completed $10 disbursement request required);
2. Musical instruments (completed $7.50 disbursement request required);
3. Radio/stereo equipment (completed $7.50 disbursement request required);
4. Typewriters (completed $10 disbursement request required); or
5. Hobby craft chemicals or hazardous materials.
. . . .
D. All property in excess of limits must be shipped by common carrier at the offender's expense, donated, or destroyed.
CP at 32-33 (This portion of the rule, taken from the record, differs in an insignificant way from the rule attached as an appendix to the appellants' brief. Appellants apparently copied a revised version of the rule.).
[2] RCW 72.02.045(3), in total, states:

The superintendent [of each correctional institution] shall be the custodian of all funds and valuable personal property of convicted persons as may be in their possession upon admission to the institution, or which may be sent or brought in to such persons, or earned by them while in custody, or which shall be forwarded to the superintendent on behalf of convicted persons. All such funds shall be deposited in the personal account of the convicted person and the superintendent shall have authority to disburse moneys from such person's personal account for the personal and incidental needs of the convicted person as may be deemed reasonably necessary. When convicted persons are released from the confines of the institution either on parole, transfer, or discharge, all funds and valuable personal property in the possession of the superintendent belonging to such convicted persons shall be delivered to them. In no case shall the state of Washington, or any state officer, including state elected officials, employees, or volunteers, be liable for the loss of such personal property, except upon a showing that the loss was occasioned by the intentional act, gross negligence, or negligence of the officer, official, employee, or volunteer, and that the actions or omissions occurred while the person was performing, or in good faith purporting to perform, his or her official duties. Recovery of damages for loss of personal property while in the custody of the superintendent under this subsection shall be limited to the lesser of the market value of the item lost at the time of the loss, or the original purchase price of the item or, in the case of hand-made goods, the materials used in fabricating the item. (emphasis added)
[3] Washington Administrative Code.
[4] DOC rule 440.000 provides that "[o]ffenders shall be allowed to dispose of their own excess or unauthorized personal property by shipping it to a non-incarcerated person ... at the offender's expense," which would include arranging for the property's pickup by a non-incarcerated person. CP at 34.