103 P.3d 1230 (2005)
Lonnie BURTON; Gordon Lebar; James Bringham; and Michael Holmberg, individually and on behalf of a class of similarly situated individuals, Petitioners,
v.
Joseph LEHMAN and Jane Doe, Lehman, husband and wife; Doug Waddington and Jane Doe Waddington, husband and wife; Maggie Miller-Stout and John Doe Miller-Stout, husband and wife; Kathy Kaatz and John Doe Kaatz, husband and wife; Richard Morgan and Jane Doe Morgan, husband and wife; Patricia Gorman and John Doe Gorman, husband and wife; Carol Porter and John Doe Porter; and John Does and Jane Does 1 Through 20, Respondents.
No. 74731-8.
Supreme Court of Washington, En Banc.
Argued September 28, 2004.
Decided January 13, 2005.
*1232 Michael John Rasch, Thomas Juhl, Seattle, for Petitioners.
Douglas Wayne Carr, Olympia, for Respondents.
OWENS, J.
Petitioners Lonnie Burton and three other inmates (Burton) filed suit against the Department of Corrections (DOC), the DOC secretary, and several DOC superintendents claiming that DOC Policy 440.000 violates RCW 72.02.045. RCW 72.02.045(3) states that "[w]hen convicted persons are released from the confines of the institution either on parole, transfer, or discharge, all ... valuable personal property in the possession of the superintendent belonging to such convicted persons shall be delivered to them." In contrast, DOC Policy 440.000, section IX limits the amount of property that DOC will ship free of charge to two boxes along with state issued transport and clothing bags.[1] All excess property must be shipped at inmates' expense, donated, or destroyed. Id. Based on DOC's practices under Policy 440.000, Burton made additional claims for due process violations; fraud; conversion; violations of the Washington Criminal Profiteering Act (WCPA), chapter 9A.82 RCW; and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. The superior court found that the term "transfer" did not apply to intra-DOC inmate movement and dismissed all of Burton's claims pursuant to a CR 12(b)(6) motion. The Court of Appeals affirmed on other grounds, holding that "transfer" does include intra-DOC movement but that inmates effectively receive "constructive delivery" under Policy 440.000.

I. FACTS
DOC Policy 440.000, section IX states that DOC will ship a limited amount of property free of charge when an inmate is transferred to another DOC facility and that any excess property must be shipped at the offender's expense, donated, or destroyed.[2] Items such as typewriters, musical instruments, televisions, and stereo equipment are generally *1233 excluded from the two box limit. In contrast, RCW 72.02.045 states in relevant part as follows:
(3) The superintendent shall be the custodian of all funds and valuable personal property of convicted persons as may be in their possession upon admission to the institution, or which may be sent or brought in to such persons, or earned by them while in custody, or which shall be forwarded to the superintendent on behalf of convicted persons....When convicted persons are released from the confines of the institution either on parole, transfer, or discharge, all funds and valuable personal property in the possession of the superintendent belonging to such convicted persons shall be delivered to them.

(Emphasis added.)
Burton's complaint alleges several transfers between DOC institutions where DOC required the payment of shipping costs for property in excess of the Policy 440.000 limit. The complaint requested class certification, alleging that DOC Policy 440.000 and its implementation violates the RCW 72.02.045(3) requirement that superintendents "shall" deliver all personal property to the inmate upon "transfer." Burton further alleged due process violations, fraud, conversion, violations of the WCPA, and violations of RICO. Burton requested several types of relief, including compensatory damages, punitive damages, treble damages, costs and attorney fees, statutory penalties, declaratory relief, an injunction, and pre- and postjudgment interest. Judge Daniel J. Berschauer granted DOC's CR 12(b)(6) motion to dismiss before any discovery was conducted, concluding that RCW 72.02.045 did not require DOC to pay for the transport of property upon an inmate's transfer to another DOC institution. The court found the word "transfer" in RCW 72.02.045 to be ambiguous and adopted DOC's view that "transfer" means transfer to the street, rather than to another DOC institution. Because the court concluded that all of Burton's additional claims were dependent upon a violation of the statute, it did not address those claims individually, but rather dismissed the complaint entirely.
Burton appealed, and the Court of Appeals affirmed on other grounds. Burton v. Lehman, 118 Wash.App. 307, 309, 76 P.3d 271 (2003). The court held that "transfer" in RCW 72.02.045(3) was not ambiguous and "clearly suggests" transfers between DOC institutions. Id. at 312-13, 76 P.3d 271. However, the court went on to hold that the term "delivery" was ambiguous because it could refer to actual or constructive delivery. Id. at 314, 76 P.3d 271. The Court of Appeals reasoned that "constructive delivery" was the appropriate definition because RCW 72.02.045(3) states that the superintendent is the custodian of inmate property and WAC 137-36-030(3) allows the superintendent to determine the type and amount of inmate property. Id. Using the constructive delivery definition, the court held that DOC Policy 440.000 does not violate RCW 72.02.045(3) because constructive delivery occurs when inmates are given the option to (1) arrange for pickup by a nonincarcerated person, (2) pay to ship the property, or (3) leave the property to the transferring DOC institution for donation or destruction. Id. at 310, 314, 76 P.3d 271. Burton's motion for reconsideration was denied, and this court granted review on June 2, 2004.

II. ISSUES
1. Does DOC Policy 440.000, requiring inmates to either pay the shipping costs for some of their property or lose ownership of that property, violate the requirement in RCW 72.02.045(3) that DOC superintendents shall deliver inmate property upon transfer?
2. Were Burton's claims for constitutional rights violations, fraud, conversion, violations of the WCPA, and violations of RICO properly dismissed pursuant to CR 12(b)(6)?

III. STANDARD OF REVIEW
Whether a dismissal was appropriate under CR 12(b)(6) is a question of law that an appellate court reviews de novo. Tenore v. AT & T Wireless Servs., 136 Wash.2d 322, 329-30, 962 P.2d 104 (1998). Under CR 12(b)(6), dismissal is only appropriate if "it appears beyond doubt that the plaintiff cannot prove any set of facts which *1234 would justify recovery." Id. at 330, 962 P.2d 104. In undertaking such an analysis, "a plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record." Id. Statutory interpretation is also a question of law that is reviewed de novo. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 607, 998 P.2d 884 (2000).

IV. ANALYSIS

A. Statutory Violation of RCW 72.02.045(3)
Where statutory language is plain and unambiguous, a court will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of a contrary interpretation by an administrative agency. See Bravo v. Dolsen Cos., 125 Wash.2d 745, 752, 888 P.2d 147 (1995); Smith v. N. Pac. Ry. Co., 7 Wash.2d 652, 664, 110 P.2d 851 (1941). A statutory term that is left undefined should be given its "usual and ordinary meaning and courts may not read into a statute a meaning that is not there." State v. Hahn, 83 Wash.App. 825, 832, 924 P.2d 392 (1996). If the undefined statutory term is not technical, the court may refer to the dictionary to establish the meaning of the word. Heinsma v. City of Vancouver, 144 Wash.2d 556, 564, 29 P.3d 709 (2001). In undertaking this plain language analysis, the court must remain careful to avoid "unlikely, absurd or strained" results. State v. Stannard, 109 Wash.2d 29, 36, 742 P.2d 1244 (1987).
In contrast, an ambiguous statute requires judicial construction. A statute is ambiguous only if susceptible to two or more reasonable interpretations, but a statute is not ambiguous merely because different interpretations are conceivable. State v. Keller, 143 Wash.2d 267, 276, 19 P.3d 1030 (2001). If a statute is subject to more than one reasonable interpretation, the court should construe the statute to effectuate the legislature's intent. Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999). Only where the legislative intent is not clear from the words of a statute may the court "resort to extrinsic aids, such as legislative history." Biggs v. Vail, 119 Wash.2d 129, 134, 830 P.2d 350 (1992).
Throughout this litigation, the parties' dispute has focused on the meaning of two undefined terms in RCW 72.02.045(3): "transfer" and "deliver[y]." Although varying interpretations of these terms are conceivable in the metaphysical sense, we conclude that a plain language analysis of each is both necessary and sufficient to dispose of the question presented.

1. Transfer
The dictionary succinctly defines "transfer" as follows: "to carry or take from one person or place to another: ... to move or send to a different location." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2426-27 (2002). Similarly, Black's Law Dictionary defines "transfer" as a verb meaning "[t]o convey or remove from one place or one person to another." BLACK'S LAW DICTIONARY 1536 (8th ed.2004). The application of these ordinary definitions to the phrase "released from the confines of the institution ... on ... transfer" requires us to give the terms "release" and "confine[ment]" their plain meaning as well. The term "release" is defined as "[t]he action of freeing or the fact of being freed from restraint or confinement." Id. at 1315-16. In turn, "confinement" is "[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained." Id. at 318. When, as here, the statutory terms are plain and unambiguous we assume the legislature meant exactly what it said and decline to construe the statute otherwise.[3]See Keller, 143 Wash.2d at 276, 19 P.3d 1030. Therefore, as the Court of Appeals correctly concluded, "transfer" must at least include an inmate's release from the confines of one DOC institution and conveyance to another. *1235 Burton, 118 Wash.App. at 312-13, 76 P.3d 271.

2. Delivery
The term "delivery" is defined as "[t]he formal act of transferring something ...; the giving or yielding possession or control of something to another." BLACK'S, supra, at 461. Although the law recognizes that delivery may be actual, constructive, or symbolic, the only reasonable definition, as applied to a transferred inmate, is "constructive" because DOC superintendents are custodians of inmate property and may limit an inmate's actual possession. See RCW 72.02.045(3); WAC 137-36-030. "Constructive delivery" requires "[a]n act that amounts to a transfer of title by operation of law when actual transfer is impractical or impossible." BLACK'S, supra, at 461.
The Court of Appeals correctly adopted the "constructive delivery" definition, though it need not have concluded that the statute was ambiguous to do so. Burton, 118 Wash.App. at 314, 76 P.3d 271. The parties themselves have not contested the use of "constructive delivery" as the correct definition, but rather they dispute its application. Burton is correct that the Court of Appeals incorrectly assumed that inmates have the option to arrange for a nonincarcerated person to retrieve excess property. See id. DOC Policy 440.000 makes no such allowance explicit, and there was no finding that Burton or any other inmate was allowed to make such arrangements. Moreover, an adoption of the Court of Appeals reasoning would fail to take into account instances where inmates are both indigent and have no available nonincarcerated persons to take possession. Such inmates would necessarily lose possession and control over the disposition of their property  a result that is incongruent with the mandate in RCW 72.02.045(3) that a transferred inmate's property "shall be delivered to them." Rather, we conclude that constructive delivery requires significantly more.
For purposes of RCW 72.02.045(3), the phrase "all ... valuable personal property in the possession of the superintendent belonging to such convicted persons shall be delivered to them" cannot be artificially limited. Nothing in the statute indicates that only some of an inmates property shall be delivered, nor does it state that the property shall be delivered at such convicted persons expense. Yet this is clearly the effect of DOC Policy 440.000. Accordingly, we must conclude that the statute means exactly what it says; that is, whenever an inmate is moved between DOC institutions, DOC is responsible for ensuring that the property owned by convicted persons and held in the custody of DOC superintendents is physically relocated from the transferor institution to the transferee institution. This is the "act ... amount[ing] to a transfer of title" required to satisfy constructive delivery in this particular context. See BLACK'S, supra, at 461. We recognize that the question of whether the transferee superintendent ultimately gives an inmate actual possession of such property is a separate issue, dependant upon circumstances not addressed in RCW 72.02.045(3). However, DOC may not impose a requirement that inmates must choose between having to pay shipping costs or lose their ownership.[4]

B. Burton's Additional Claims
Burton's additional claims for due process violations, fraud, conversion, violations of the WCPA, and violations of RICO were initially dismissed by the superior court without discussion based on the incorrect conclusion that Policy 440.000 does not violate RCW 72.02.045(3). While many of these claims may continue to be without merit and subject to CR 12(b)(6) dismissal, remand is appropriate as Burton may wish to move to amend the complaint and conduct discovery, and *1236 DOC may wish to file a renewed motion based on the conclusion of this opinion.

V. CONCLUSION
We hold that the dismissal of Burton's claim that DOC Policy 440.000 violates RCW 72.02.045(3) was improper under CR 12(b)(6). The term "transfer" in RCW 72.02.045(3) includes transfers between DOC institutions. The phrase "delivered to them" refers to constructive delivery and requires DOC to convey inmate property to the receiving institution free of charge. Thus, under RCW 72.02.045(3), DOC is required to physically convey all the personal property of convicted persons, which is held in the custody of DOC superintendents, to the receiving superintendent when such convicted persons are transferred between DOC institutions. We further hold that the superior court's dismissal of Burton's additional claims under CR 12(b)(6) was inappropriate as it was based solely on an erroneous interpretation of RCW 72.02.045(3). Accordingly, we reverse the Court of Appeals and remand to the superior court for further proceedings consistent with this opinion.
We concur: ALEXANDER, C.J., JOHNSON, SANDERS and CHAMBERS, JJ.
FAIRHURST, J. (concurring).
I concur in the result reached by the majority. If we take all facts alleged by the petitioners in their pleadings as true, as CR 12(b)(6) requires, petitioners may have stated a claim for which relief could be granted. Therefore, the trial court's dismissal was improper. I write separately, however, because I do not believe, as the majority holds, that RCW 72.02.045 requires the Department of Corrections (DOC) to pay for the transport of all inmate personal property upon an inmate's transfer to a new institution.
RCW 72.02.045(3) requires the superintendent of each institution to "deliver[ ]" an inmate's personal property upon transfer to another institution. It does not require that superintendents pay for the shipment of such property. On its own accord, DOC transports up to two boxes when an inmate is transferred to a new institution. Petitioners assert that DOC's failure to pay to ship their property in excess of two boxes constitutes a failure to deliver personal property. The heart of the controversy, then, rests on the definition of "delivered" as it is used in RCW 72.02.045(3).
I agree with the majority that there can be actual and constructive delivery and that the sort of delivery at issue in this case is constructive because the correctional facility superintendents remain the custodians of inmate personal property. My disagreement with the majority, however, is when and how that delivery occurs. The majority construes delivery to mean that DOC physically transports an inmate's property  at DOC's own expense  from one institution to the next. I believe that delivery in the constructive sense is allowing the owners of the property to designate what happens to their property upon transfer from one facility to the next. Delivery does not require DOC to transport or pay for the shipment of all inmate personal property.
The majority appears to agree that it is the institution superintendents who continue to be the custodians of inmate property. The constructive delivery, then, is following the reasonable instructions of the owners in the potential relocation of their property. This happens at the point when inmates become aware that they will be transferred and continues for 6 or 12 months after the inmates arrive at their new institution. See WAC 137-36-040(3)(a). Inmates have several choices in determining how to manage the disposition of their property. Those choices include paying for the shipment of their property to the receiving institution, paying for shipment of their property to a nonincarcerated individual, deciding to leave their property at their former institution (while recognizing that it will be destroyed or donated within 6 or 12 months), or arranging for someone else to pick up their property within 6 months of transfer.[1]
*1237 DOC has adopted a regulation providing procedures it must follow when disposing of inmate property that is deemed to be abandoned. WAC 137-36-040. Sufficient process is built into those procedures. Id. Property left unclaimed is not presumed abandoned until 6 months have passed after an inmate has been transferred. WAC 137-36-040(3)(a). When inmates who have been transferred have no recorded next of kin or other individuals to which unclaimed property can be sent, property is not presumed abandoned for 12 months. Id. Inmates who are transferred have at least 6 months  and in some cases 12 months  to designate disposition of their property. Id. Once inmate property has been "abandoned" within the definitions set forth above, DOC may either destroy the property or donate it to a charitable nonprofit organization. WAC 137-36-040(3)(c). At least 30 days prior to such disposal, however, DOC must give written notice to the owner of its intent to dispose of the property. WAC 137-36-040(3)(e). Not only do inmates have 6 or 12 months to designate the disposition of their property upon transfer to a new institution, including raising money through wages, friends, or family to ship their property to their current location or elsewhere, they also get 30 days' notice prior to the donation or destruction of the abandoned property. This is sufficient for DOC to have constructively "delivered" inmate property as set forth in RCW 72.02.045(3).
Because petitioners allege that DOC forces the choice of payment for shipment or destruction of property and thereby does not allow the option of having friends or relatives pick up their personal property if they are transferred, I would remand the case to the trial court for a factual determination of the issue. If petitioners' allegations are found to be true, DOC may not have effectively delivered inmate property as required by statute. This is because, as the majority notes, there may be instances where inmates are indigent and unable to pay for the delivery of their property. Majority at 9-10. The majority also suggests there are instances where inmates would have "no available nonincarcerated persons to take possession." Id. Petitioners made no such allegation in their complaint. Regardless, WAC 137-36-040(3)(a) provides that individuals with no recorded next of kin or person to whom unclaimed property can be sent, have 12 months to come up with the funds to ship their property to their present institution. Presumably this would also allow inmates 12 months to designate or locate someone to pick up their property. This gives inmates enough control over the fate of their property to constitute constructive delivery.
The law does not require DOC to pay for the transport of inmate property; it merely allows inmates to designate the disposition of their property within reason. Accordingly, I concur in the result.
We concur: MADSEN, BRIDGE and IRELAND, JJ.
NOTES
[1] Effective May 24, 2004, DOC amended its previous policy regarding disposition and transfer of offender property. The notable difference between the old and new versions of the policy is the inclusion of a new section, DOC Policy 440.020, which adds the allowance for personal transport and clothing bags and exempts medically issued items from the two box limit. Since Burton is alleging a continuing harm, as well as past harms, all references to DOC Policy will be to the 2004 policy as the new version does not affect the requirement that inmates pay to ship the items at issue in this case.
[2] An offender is limited to two shipping boxes under 25 pounds in weight that must include legal documents, the inmate's religious sacred items box, and a valuables envelope. DOC Policy 440.000 § IX; DOC Policy 440.020. Medically issued items, a transport bag carrying toiletries, and a state issued clothing bag containing state issued clothing are also transported by DOC and not included in the two box limit. Id.
[3] DOC would have us look to the historical significance of the various statutes superseded by, and consolidated within, RCW 72.02.045(3). Undertaking an analysis of this vague and unpersuasive legislative history might have been an appropriate method of construction if "transfer" was ambiguous, but it cannot become the cause of such ambiguity where the meaning of the term is already clear. See Biggs, 119 Wash.2d at 134, 830 P.2d 350.
[4] DOC argues that its interpretation of RCW 72.02.045(3) should be given deference as the administering agency. While deference is appropriate if the interpretation reflects a plausible construction of the language of the statute, "the court is the final authority on statutory construction and it need not approve regulations or decisions inconsistent with a statute." Moses v. Dep't of Soc. & Health Servs., 90 Wash.2d 271, 274, 581 P.2d 152 (1978). DOC's interpretation is neither consistent with the plain language of RCW 72.02.045(3) nor an official interpretation of that statute. Thus, no deference is due.
[1] The Court of Appeals found that friends and relatives of inmates were allowed to pick up inmate property but did not cite support for that finding. At oral argument, petitioners argued that friends and relatives were not being allowed to pick up property. DOC responded that it believed such conduct was being allowed, but it was not certain. This is an unresolved question of fact.

The parties also discussed during oral argument how inmate property is acquired. DOC asserted that all or almost all inmate property is acquired by inmates through their own funds while incarcerated (and not allowed to be brought to the institution by friends or relatives). The implication, therefore, is that inmates who have funds to purchase property while confined should have the money to ship their property when transferred to another institution. Again, this fact is not reflected in the record and should be developed during a factual hearing. I would merely hold that constructive delivery occurs by giving inmates reasonable choices in the disposition of their property, which does not require DOC to pay for shipment.