[No. 24225-1-III.   Division Three.   February 14, 2006.]

DANIEL GASPAR, *Appellant*, v. PESHASTIN HI-UP GROWERS, *Respondent*.

*Scott M. Kane*, for appellant.
*Lewis W. Card*, for respondent.

¶1 SCHULTHEIS, J. — Daniel Gaspar filed a complaint against his former employer, Peshastin Hi-Up Growers, for wrongful termination in violation of public policy. He contends he was terminated for assisting a police investigation

at his workplace. The trial court dismissed his complaint and he appeals, contending the trial court failed to recognize that he was terminated in violation of a clearly mandated public policy. Because we find that Mr. Gaspar established a valid claim that he was discharged in violation of a clear public policy for assisting a police investigation, we reverse and remand.

FACTS

¶2 For the purposes of this appeal, the following facts alleged in Mr. Gaspar's complaint are not disputed.

¶3 Mr. Gaspar was the general manager at Peshastin Hi-Up Growers (PHU), a Washington cooperative. On November 12, 2003, a detective from the Chelan County sheriff's department contacted Mr. Gaspar regarding PHU employee Jean Dennis. Ms. Dennis had unlawfully bought postage stamps for discounted prices from a defective machine at the Leavenworth Post Office. When confronted by Mr. Gaspar two days later, she admitted purchasing the stamps at the malfunctioning machine. Eventually she paid back the post office by altering a pretyped check. Mr. Gaspar notified the PHU board of directors in December 2003 and discussed termination of Ms. Dennis with individual board members later that month. He also consulted an attorney for advice on how to proceed.

¶4 Between November 12, 2003 and January 12, 2004, Mr. Gaspar met with the detective and a prosecutor six times regarding the illegally obtained stamps and the altered check. In late December 2003, the board voted to place Ms. Dennis on administrative leave. Then, on January 14, 2004, without prior notice, the board voted to terminate Mr. Gaspar's employment.

¶5 In October 2004, Mr. Gaspar filed a complaint against PHU alleging wrongful termination in violation of public policy. He alleged he was terminated for reporting illegal acts to the board. By amended complaint, he later additionally alleged he was terminated for his contacts with law

enforcement. PHU moved to dismiss pursuant to CR 12(b)(6) (failure to state a claim upon which relief can be granted) or CR 12(c) (judgment on the pleadings). On April 8, 2005, the trial court issued an order of dismissal. Mr. Gaspar promptly moved for reconsideration. In its letter memorandum decision denying the motion for reconsideration, the trial court reiterated that Mr. Gaspar had failed to establish a clearly mandated public policy for helping law enforcement. As a result, he failed to support a claim of wrongful termination in violation of such a public policy. Mr. Gaspar timely appealed.

WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

¶6 Under the common law, at-will employees are generally terminable at will. *Sedlacek v. Hillis*, 145 Wn.2d 379, 385, 36 P.3d 1014 (2001); *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996). However, Washington courts recognize an exception to this general rule when an employee is discharged in violation of public policy. *Hubbard v. Spokane County*, 146 Wn.2d 699, 707, 50 P.3d 602 (2002); *Sedlacek*, 145 Wn.2d at 385. To establish a tort claim for wrongful discharge in violation of public policy, the plaintiff must prove (1) the existence of a clearly mandated public policy (the clarity element), (2) that discouraging the plaintiff's conduct would jeopardize that public policy (the jeopardy element), and (3) that the plaintiff's public-policy-linked conduct was the reason for the dismissal (the causation element). *Hubbard*, 146 Wn.2d at 707. Once those elements are met, the burden shifts to the employer to prove an overriding justification for the dismissal. *Id.* (quoting *Gardner*, 128 Wn.2d at 941).

¶7 Because we are reviewing the trial court's dismissal of Mr. Gaspar's suit pursuant to CR 12(b)(6) or CR 12(c), our review is de novo. *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005); *Suleiman v. Lasher*, 48 Wn. App. 373, 376, 739 P.2d 712 (1987) (a motion to dismiss for failure to state a claim (CR 12(b)(6)) and a motion for

judgment on the pleadings (CR 12(c)) raise identical issues). Dismissal under CR 12 is appropriate only if it is beyond doubt that the plaintiff can prove no facts that would justify recovery. *Burton*, 153 Wn.2d at 422; *Suleiman*, 48 Wn. App. at 376. In making this determination, the court must presume that the plaintiff's allegations are true and may consider hypothetical facts that are not included in the record. *Burton*, 153 Wn.2d at 422. A CR 12 motion should be granted sparingly so that a plaintiff is not improperly denied adjudication on the merits. *Fondren v. Klickitat County*, 79 Wn. App. 850, 854, 905 P.2d 928 (1995). "Usually, dismissal is granted . . . 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *Id*. (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 344 (2d ed. 1990)).

¶8 Mr. Gaspar asserts Washington has a clearly mandated public policy to encourage citizen cooperation with a police investigation. He contends the trial court erred in concluding that no clear mandate of public policy existed that made his discharge unlawful. The trial court assumed the truth of Mr. Gaspar's allegation that he was fired because he assisted a sheriff's detective and a prosecutor in their criminal investigation of stolen postage stamps and an altered check. Accordingly, the only issue before this court is whether Mr. Gaspar established the clarity element of his claim for wrongful termination in violation of public policy: the existence of a clearly mandated public policy for assisting a police investigation. This is an issue of law. *Hubbard*, 146 Wn.2d at 708.

¶9 Washington courts have recognized four general situations that give rise to the public policy exception for termination at will: discharge "(1) for refusing to commit an illegal act; (2) for performing a public duty or obligation; (3) for exercising a legal right or privilege; and (4) in retaliation for reporting employer misconduct." *Id*. at 707-08 (citing *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989)). Mr. Gaspar contends he was discharged

for performing a public duty to cooperate with law enforcement during a criminal investigation. In determining whether he carried his burden of establishing a public duty, we are required to find, not create, public policy. *Miguel v. Guess*, 112 Wn. App. 536, 557, 51 P.3d 89 (2002). "[F]indings of public policy must be clearly grounded in legislation or prior jurisprudence in order to protect employers from frivolous lawsuits and to assure balance between the interests of the employer and the interests of the employee." *Sedlacek*, 145 Wn.2d at 385 (citing *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232-33, 685 P.2d 1081 (1984)).

¶10 Mr. Gaspar cites four statutes he asserts establish a clear public policy to cooperate with law enforcement criminal investigations: RCW 7.69.010 (which states that witnesses and victims of crimes have a civic and moral duty to cooperate fully with law enforcement and prosecutors), RCW 9.01.055 (which gives citizens who aid police the same civil and criminal immunity as the police), RCW 9A.76.020 (which makes it a crime to willfully obstruct a police officer from discharging his or her duties), and RCW 9A.76.030 (which makes it a crime to unreasonably refuse to comply with an officer's request to summon aid for the officer). The same statutes were offered in *Gardner*, 128 Wn.2d at 938-39, as proof that there is a clear public policy encouraging citizens to assist law enforcement in the apprehension and prosecution of criminals.

¶11 In *Gardner*, an armored truck guard was terminated for violating a company rule forbidding drivers from leaving the truck unattended. 128 Wn.2d at 934-35. While sitting in his armored truck one day, the guard saw a man with a knife chase a woman out of a bank. When the woman cried out for his help, the guard exited and locked the truck, chased the armed man, and eventually tackled and disarmed him. *Id.* at 934. He was later fired for leaving his truck unattended. He sued the armored truck company in federal court, claiming in part wrongful discharge in violation of public policy. On certification from the federal court, the Washington Supreme Court addressed whether it vio-

lated public policy to discharge an at-will employee for violating a company rule by going to the assistance of an endangered citizen. *Id.* at 935. The guard argued in part that RCW 7.69.010, RCW 9.01.055, RCW 9A.76.020, and RCW 9A.76.030 established a clear public policy for citizen cooperation in the apprehension of criminals. *Gardner,* 128 Wn.2d at 938-39. *Gardner* noted, however, that these statutes supported a more limited policy of encouraging citizens to cooperate with law enforcement *when requested* or clearly required by law. *Id.* at 942-43. Because the guard had not gone *to the aid* of an officer but had instead taken the proactive step of tackling the armed man on his own prerogative, *Gardner* held that the statutes did not apply. *Id.*

¶12 Here, however, Mr. Gaspar was approached by law enforcement for help with the investigation of a fellow employee's alleged theft of postage stamps. RCW 7.69.010 specifically recognizes "the civic and moral duty of victims, survivors of victims, and witnesses of crimes to fully and voluntarily cooperate with law enforcement and prosecutorial agencies," while RCW 9A.76.020 makes it a crime to obstruct a police investigation. Although these statutes and the other two cited by Mr. Gaspar do not specifically state that each citizen has a civic and moral duty to cooperate with a police criminal investigation, they represent a "limited, albeit clear, public policy" encouraging citizens "to *cooperate* with law enforcement when requested." *Gardner,* 128 Wn.2d at 942.

¶13 Further, recognition of a public policy to assist law enforcement is fundamental. As stated by the Illinois Supreme Court in *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 132, 421 N.E.2d 876, 52 Ill. Dec. 13 (1981):

> There is no public policy more basic, nothing more implicit in the concept of ordered liberty, than the enforcement of a State's criminal code. There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.

No specific constitutional or statutory provision requires a citizen to take an active part in the ferreting out and prosecution of crime, but public policy nevertheless favors citizen crime-fighters. "Public policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. . . . " (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 44[, 411 N.E.2d 229, 44 Ill. Dec. 260].)

(Citations omitted.) In review of a claim of wrongful discharge in violation of public policy, the Massachusetts Supreme Judicial Court concluded that public policy may be found "in certain circumstances for employees terminated for performing important public deeds, even though the law does not absolutely require the performance of such a deed." *Flesner v. Technical Commc'ns Corp.*, 410 Mass. 805, 810-11, 575 N.E.2d 1107 (1991). The court continued, "Cooperating with an ongoing governmental investigation is an important public deed which fits this category." *Id.* at 811.

¶14 In light of the clear public policy expressed by *Gardner*, 128 Wn.2d at 942-43, and especially in RCW 7.69.010, we find that Mr. Gaspar satisfied his burden of proving the clarity element of his claim for wrongful discharge in violation of public policy. Accordingly, the trial court erred in dismissing his suit for failure to state a claim.

¶15 Reversed and remanded for trial.

SWEENEY, A.C.J., and THOMPSON, J. PRO TEM., concur.

Review denied at 158 Wn.2d 1029 (2007).