COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 AUG -5 AM 9: 48



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOHN LEIPHEIMER, as his separate
estate, a married man,

        Appellant,

        v.

RECONTRUST COMPANY, N.A., a
Nevada corporation; COUNTRYWIDE
HOME LOANS, INC., a New York
corporation; BAC HOME LOANS
SERVICING, L.P., a Texas corporation;
LS TITLE OF WASHINGTON,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a
Delaware Corporation; and DOE
defendants 1-20,

        Respondents.

DIVISION ONE

No. 67005-1-I

UNPUBLISHED OPINION

FILED: August 5, 2013

DWYER, J. — Following the initiation of nonjudicial foreclosure proceedings against his property, John Leipheimer filed suit seeking to enjoin the trustee's sale and, in addition, seeking damages for wrongful foreclosure, violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and violations of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. Leipheimer also sought to quiet title to his property. The trial court dismissed Leipheimer's claims pursuant to Civil Rule (CR) 12(b)(6) for failure to state a claim upon which relief can be granted. However, Leipheimer's complaint

alleged facts that, if proved at trial, would entitle him to some relief. Thus, we reverse in part and remand for further proceedings.

I

In January 2006, John Leipheimer obtained a $960,000 loan from Countrywide Home Loans, Inc. by executing a promissory note in favor of Countrywide. As security for the note, Leipheimer executed a deed of trust. The deed of trust named Countrywide as the lender, Land Safe Title of Washington (LS Title) as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary. The deed of trust was recorded in King County on January 25, 2006.

Leipheimer failed to make payments on his loan as required by the promissory note and, on May 20, 2009, ReconTrust Company, N.A. mailed a notice of default to Leipheimer. The notice of default stated that ReconTrust was acting "as agent for beneficiary," and named MERS as the "creditor to whom the debt is owed." The notice of default further stated that a total of $34,026.51 was due from Leipheimer to MERS in order to cure the payment defaults.

On or about May 20, 2009, MERS—acting in its capacity as "the present beneficiary under [the] deed of trust"—executed an appointment of successor trustee, nominating ReconTrust as the trustee under the deed of trust. This instrument was recorded in King County on May 29, 2009.

On June 18, 2009, ReconTrust executed a notice of trustee's sale.[1] The notice stated that the deed of trust was granted by Leipheimer to "secure an

---

[1] This instrument was recorded in King County on June 24, 2009.

-2-

obligation in favor of [MERS], as beneficiary." It stated that $34,915.64 was owed by Leipheimer. The sale was initially set to take place on September 25, 2009, but was continued by ReconTrust to October 30, 2009.

On October 23, 2009, one week prior to the scheduled trustee's sale, Leipheimer filed a lawsuit against ReconTrust, Countrywide, LS Title, MERS, and BAC Homeloans Servicing (the servicer of Leipheimer's loan), alleging wrongful foreclosure, defamation of title, malicious prosecution, violation of the CPA, quiet title, and violation of the FDCPA.[2] As damages, Leipheimer alleged that

> [a]s a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered damage to their reputation . . . including but not limited to impairment of their credit scores, a negative impact upon their ability to secure financing for the residence or other remedial measures to address their financial situation, cost related to the investigation of the above matters, including travel costs expended to receive professional consultation and fees related to these consultations.

Leipheimer further alleged that he had incurred "distraction and the loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct." Finally, he requested consequential damages incurred "in defending against the actions of the Defendants," and "statutory damages available under any applicable statutes."

The trial court issued a temporary restraining order enjoining the trustee's sale on October 29, 2009.

ReconTrust, Countrywide, LS Title, MERS, and BAC thereafter filed a

---

[2] Leipheimer does not assign error to the trial court's dismissal of his claims of defamation of title and malicious prosecution. Nor does he provide argument regarding these claims within his briefing. Accordingly, we do not consider these claims.

- 3 -

motion to dismiss Leipheimer's complaint for failure to state a claim pursuant to CR 12(b)(6). The trial court granted the motion and dismissed Leipheimer's claims on January 7, 2011.[3]

Leipheimer appeals.[4]

## II

As a threshold matter, we note that we have recently resolved many of the issues raised by this case in Walker v. Quality Loan Serv. Corp., No. 65975-8-I, slip op. (Wash. App. Aug. __, 2013), a case argued to us on the same day as the arguments herein. Although, in that case, the trial court dismissed Walker's claims pursuant to CR 12(c), the standard of review of a dismissal pursuant to CR 12(b)(6) is the same. In both instances, we review a trial court's decision to dismiss de novo. Gaspar v. Peshastin Hi-Up Growers, 131 Wn. App. 630, 634, 128 P.3d 627 (2006). As is true when dismissal is sought pursuant to CR 12(c), dismissal pursuant to CR 12(b)(6) is appropriate only where it appears beyond doubt that the plaintiff cannot prove any facts that would allow recovery. Burton v. Lehman, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005). We must accept the allegations in the complaint as true; moreover, we may consider even

---

[3] Leipheimer thereafter filed a motion for reconsideration of the order. The trial court denied this motion.

[4] On October 12, 2012, ReconTrust, Countrywide, LS Title, MERS, and BAC filed a motion for relief pursuant to RAP 18.9, asserting that Leipheimer had failed to comply with this court's order to pay the arrearages on the subject property's mortgage into the superior court registry. As relief, they ask this court either to (1) dismiss Leipheimer's appeal in its entirety, (2) condition his further participation upon compliance with our previous order, or (3) provide appropriate terms or sanctions for Leipheimer's failure to comply with the order. However, our order did not condition Leipheimer's right to appeal upon the payment of the arrearages into the superior court registry. Instead, it was a stay of our consideration of Leipheimer's appeal that was conditioned upon the making of such payments. Accordingly, the proper remedy is to lift the stay. Because the appeal has now been heard, no further relief is warranted.

hypothetical facts outside the record in determining if dismissal is warranted. Lehman, 153 Wn.2d at 422. Such motions should generally be granted "only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007).

This case is largely resolved by applying the rules set forth in Walker. Given that this case involves different parties, several of whom play different roles than those discussed in Walker, we will note these differences and their significance when necessary.

III

Leipheimer first asserts that the trial court erred by dismissing his claims against MERS and ReconTrust for wrongful foreclosure under the Washington deeds of trust act, chapter 61.24 RCW (DTA).[5] We agree.

As did the appellant in Walker, Leipheimer has characterized his claims under the DTA, both in the trial court and on appeal, as claims for "wrongful foreclosure." In response, MERS and ReconTrust have argued that, because no foreclosure sale took place, the absence of such a sale should preclude these claims. The basis of Leipheimer's claims, however, is his allegation that MERS and ReconTrust failed to materially comply with the provisions of the DTA. Leipheimer contends that because MERS did not hold the promissory note, the company was not a lawful beneficiary under the DTA and that, accordingly,

---

[5] We note that, on appeal, Leipheimer attempts to assert a DTA claim against his loan servicer, BAC. However, because his complaint included no such allegation, this claim is not properly before us and we do not review it.

MERS had no authority to appoint ReconTrust as a successor trustee. Accordingly, ReconTrust's issuance of the notice of trustee's sale was necessarily in violation of the DTA. Thus, as we also determined in Walker, Leipheimer's claims of "wrongful foreclosure" are more accurately characterized as claims of damages arising from violations of the DTA. No. 65975-8-I, slip op. at 6.

These claims were improperly dismissed by the trial court. As our Supreme Court determined in Bain v. Metropolitan Mortgage Group, Inc., MERS is "an ineligible beneficiary within the terms of the [DTA], if it never held the promissory note or other debt instrument secured by the deed of trust." 175 Wn.2d 83, 110, 285 P.3d 34 (2012) (internal quotation marks omitted). The court explained that "[a] plain reading of the statute leads us to conclude that only the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." Bain, 175 Wn.2d at 89. In Walker, we reasoned that, because only a properly appointed successor trustee has authority to issue a notice of trustee's sale, "when an unlawful beneficiary appoints a successor trustee, the putative trustee lacks the legal authority to record and serve a notice of trustee's sale." No. 65975-8-I, slip op. at 7. Such actions, we held, constitute material violations of the DTA. Walker, No. 65975-8-I, slip op. at 10. We further explained that where a trustee has failed to materially comply with the provisions of the DTA, such conduct gives rise to a presale cause of action for damages. Walker, No. 65975-8-I, slip op. at 17.

- 6 -

Here, Leipheimer contends that ReconTrust engaged in conduct identical to that which we found wrongful in Walker. MERS never held the promissory note, Leipheimer asserts, and accordingly, it was an ineligible beneficiary. Because MERS had no "power to appoint a trustee to proceed with a nonjudicial foreclosure," it could not lawfully appoint ReconTrust to foreclose on Leipheimer's property. Bain, 175 Wn.2d at 89. And, because only a properly appointed successor trustee is vested with the power to issue a notice of trustee's sale, the taking of such an action by ReconTrust with respect to Leipheimer's property was also contrary to the DTA.[6] Furthermore, as we noted in Walker, it was not necessary for the foreclosure sale to be completed in order for Leipheimer to maintain his claim for damages under the DTA.

Assuming the facts alleged by Leipheimer in his complaint to be true, as we must when reviewing an order of dismissal pursuant to CR 12(b)(6), ReconTrust's issuance of the notice of trustee's sale constituted a violation of the DTA. Because Leipheimer would be entitled to relief if such facts were proved at trial, the trial court erred by dismissing this claim.[7]

---

[6] Leipheimer asserts two additional reasons that ReconTrust was not a valid trustee under Washington law. He notes, first, that ReconTrust did not maintain a physical office in Washington as required by RCW 61.24.030(6) and, second, that the company was a wholly owned subsidiary of Bank of America, a party whom, Leipheimer speculates, may have held the promissory note at the time the foreclosure proceedings were initiated. Because, Leipheimer contends, the same party cannot serve as both trustee and beneficiary, such an arrangement also violates the DTA. These assertions by Leipheimer, however, are raised for the first time on appeal and we do not consider them.

[7] Leipheimer asserts his DTA claims not only against the trustee but also against MERS, the named beneficiary under the deed of trust. In Walker, we noted that the language of the DTA refers only to the "'[f]ailure of the *trustee* to materially comply with the provisions of this chapter.'" Walker, No. 65975-8-I, slip op. at 16-17 (emphasis in original) (quoting RCW 61.24.127(1)(c)). However, we explained, our Supreme Court has recognized that "'[w]here the beneficiary so controls the trustee so as to make the trustee a mere agent of the beneficiary, then as principle

IV

Leipheimer next asserts that the trial court erred by dismissing his claims against ReconTrust, MERS, and BAC under the FDCPA. Leipheimer contends, first, that ReconTrust and BAC violated section 1692e of the FDCPA based upon those parties' false and misleading representations made in the course of debt collection activities.[8] Second, Leipheimer asserts violations of section 1692f(6) of the FDCPA by ReconTrust or "any other party" based upon a "threat to take non-judicial action to dispossess the Plaintiffs of their real property, without a present right to possession."

Only Leipheimer's claims under section 1692f(6), however, afford him the possibility of relief. In Walker, we adopted the predominant view emerging among district courts within the Ninth Circuit and held that "'insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only § 1692f(6) of the FDCPA applies.'" No. 65975-8-I, slip op. at 20-21 (quoting McDonald v. OneWest Bank, FSB, No. C10-1952, 2012 WL 555147, at *4 n.6 (W.D. Wash. Feb. 21, 2012)). "Acts required to institute foreclosure proceedings, such as the recording of a notice of default, alone, are not debt collection

---

[sic], the beneficiary may be liable for the acts of its agent.'" Walker, No. 65975-8-I, slip op. at 16-17 (alteration in original) (quoting Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 791 n.12, 295 P.3d 1179 (2013). Here, as in Walker, we are able to plausibly hypothesize that MERS controlled ReconTrust's actions in violating the DTA. Accordingly, Leipheimer's claim against MERS was improperly dismissed pursuant to CR 12(b)(6).

[8] Leipheimer's complaint also alleged violations of the FDCPA by Countrywide. However, on appeal, Leipheimer assigns no error to the trial court's dismissal of this claim. Accordingly, only Leipheimer's section 1692e claims against ReconTrust and BAC are now at issue. In addition, Leipheimer attempts to allege a violation of section 1692e by MERS. However, Leipheimer's complaint did not include such an allegation and, accordingly, this claim is not properly before us.

activities for purposes of the FDCPA unless alleged in relation to a claim for violation of 15 U.S.C. § 1692f(6)." Jara v. Aurora Loan Servs., LLC, No. C 11–00419 LB, 2011 WL 6217308, at *5 (N.D. Cal. Dec. 14, 2011).

Here, the trial court did not err by dismissing Leipheimer's claims under section 1692e of the FDCPA. There is no indication that either ReconTrust or BAC engaged in any activities beyond those necessary to institute foreclosure proceedings. Accordingly, Leipheimer's section 1692e claims against these entities were correctly dismissed.

Leipheimer's claims under section 1692f(6), on the other hand, were improperly dismissed by the trial court. Under this section, the term "'debt collector' . . . includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). Section 1692f(6) prohibits such a person from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

In this case, Leipheimer's claims relate specifically to the enforcement of a security interest by MERS, ReconTrust, and BAC, and, as such, these parties may be "debt collectors" within the meaning of section 1692f(6). Moreover, under Leipheimer's theory of the case, none of these parties had a present right to possession of the property through nonjudicial foreclosure because they were not the holders of the underlying debt instrument. Accordingly, if Leipheimer is

able to prove this underlying DTA violation, he may also be able to show that MERS, ReconTrust, and BAC violated section 1692f(6) by threatening nonjudicial foreclosure.

Presuming the facts stated in Leipheimer's complaint to be true, Leipheimer's claims under section 1692f(6) of the FDCPA are claims upon which relief could be granted. Accordingly, the trial court erred by dismissing these claims pursuant to CR 12(b)(6).

IV

Leipheimer next contends that he pleaded facts sufficient to demonstrate violations of the CPA by MERS, ReconTrust, and BAC and that, accordingly, the trial court erred by dismissing these claims. We agree.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. In order to prove a CPA claim, a plaintiff must establish: (1) that the defendant engaged in an unfair or deceptive act or practice, (2) that the act occurred in trade or commerce, (3) that the act impacts the public interest, (4) that the plaintiff suffered injury to his or her business or property, and (5) that the injury was causally related to the unfair or deceptive act. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009).

In Bain, our Supreme Court concluded that—in circumstances where MERS claims to act as the beneficiary under a deed of trust—the first element of a CPA claim is presumptively met. 175 Wn.2d at 117. The court noted that many courts have determined that it is "deceptive to claim authority when no

- 10 -

authority existed and to conceal the true party in a transaction." Bain, 175 Wn.2d at 117 (citing Stephens v. Omni Ins. Co., 138 Wn. App. 151, 159 P.3d 10 (2007), aff'd, 166 Wn.2d 27, 204 P.3d 885 (2009)). Accordingly, the court explained, "[t]he fact that MERS claims to be a beneficiary, when under a plain reading of the statute it was not, presumptively meets the deception element of a CPA action." Bain, 175 Wn.2d at 119-20. More recently, in Klem v. Washington Mutual Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013), the court explained that a trustee's failure to fulfill its duty to a borrower also constitutes a "deceptive act" within the meaning of the CPA.

Here, in addition to his allegation that MERS was improperly named as the beneficiary on his deed of trust, Leipheimer identifies several additional acts by ReconTrust, BAC, and MERS in support of his CPA claims. He asserts, first, that because ReconTrust was not a properly appointed successor trustee, it misrepresented its own authority when it issued the notice of trustee's sale to Leipheimer. Leipheimer further contends that this notice—issued by ReconTrust under the direction, Leipheimer asserts, of MERS and BAC—falsely stated that the default payments were due to MERS when in fact MERS was owed no such obligation. Finally, he contends that ReconTrust, BAC, and MERS "facilitated a deceptive and misleading effort to wrongfully execute and record documents each knew or should have known contained false statements related to the Appointment of Successor Trustee and Assignment of Deed of Trust."

In light of the Bain and Klem decisions, MERS, ReconTrust, and BAC do not dispute that their alleged conduct satisfies the first three elements of a CPA

claim. As Leipheimer correctly points out, the notice of default named MERS as the "creditor to whom the debt is owed." The notice of trustee's sale likewise named MERS as the beneficiary to whom the underlying obligation was owed. However, assuming the facts pleaded by Leipheimer to be true, because MERS did not hold the promissory note, no such payment was owed to MERS. Moreover, these notices were issued by ReconTrust, a party which, Leipheimer contends, had no authority to act as trustee. Given our Supreme Court's recognition in Bain that it is "deceptive to claim authority when no authority existed and to conceal the true party in a transaction," 175 Wn.2d at 117, the first element of Leipheimer's CPA claim is satisfied.[9]

Accordingly, MERS, ReconTrust, and BAC focus their arguments on injury and causation. They contend, first, that Leipheimer's asserted injuries are not cognizable CPA injuries and, second, that these injuries did not result from the deceptive acts alleged by Leipheimer. However, as we noted in Walker, such arguments are foreclosed by our Supreme Court's decision in Panag. In that case, the court explained that "the injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'"

---

[9] ReconTrust, MERS, and BAC do not dispute that Leipheimer pleaded sufficient facts to satisfy the second and third elements of his CPA claim. With regard to the second element, our Supreme Court has explained that "there is considerable evidence that MERS is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide." Bain, 175 Wn.2d at 118. Thus, the court concluded, the public interest element is presumptively met where MERS is improperly named as beneficiary. Bain, 175 Wn.2d at 118. The court did not address whether the requirement that the act "occur in trade or commerce" is presumptively met in such circumstances; however, given the subject and purpose of foreclosure proceedings, ReconTrust, MERS, and BAC concede that the third element of Leipheimer's CPA claim is also satisfied.

Panag, 166 Wn.2d at 57 (quoting Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). "Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA." Walker, No. 65975-8-I, slip op. at 25 (citing Panag, 166 Wn.2d at 62).

Here, Leipheimer asserts as injuries the costs of investigating the lawfulness of the notice of trustee's sale, the costs of associated travel, fees relating to professional consultation, and the loss of time to pursue business and personal activities. These injuries, he alleges, were "solely the result of the conduct of the defendants in this action." Under the broad approach to injury and causation set forth in Panag, such alleged facts are sufficient to support these elements. Accordingly, because Leipheimer pleaded facts that, if proved, could satisfy all of the elements of his CPA claims, the trial court erred by dismissing these claims pursuant to CR 12(b)(6).

V

Leipheimer next asserts that naming MERS as the beneficiary under the deed of trust renders that instrument a nullity and that, accordingly, the trial court erred by dismissing his action to quiet title. In the alternative, he asserts that the deed of trust is unenforceable because it is possible that it has been separated from the promissory note. We rejected identical arguments in Walker. Adopting the reasoning set forth in that decision, we reject them here as well. The trial court did not err by dismissing Leipheimer's action to quiet title pursuant to CR 12(b)(6).

## VI

Leipheimer's final contention is that he is entitled to an award of attorney fees and costs on appeal based upon the "terms of the parties' Note and Deed of Trust." RAP 18.1 permits a prevailing party to recover fees incurred on appeal where that party is able to recovery such fees at trial. Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). Here, however, because Leipheimer has not yet prevailed on the merits of his claims, he is not yet a prevailing party. See Ryan v. Dep't of Soc. & Health Servs., 171 Wn. App. 454, 476, 287 P.3d 629 (2012). Accordingly, an award of attorney fees would be premature.

We reverse the trial court's order dismissing Leipheimer's claims for violations of the DTA, the CPA, and section 1692f(6) of the FDCPA. We affirm the court's dismissals of Leipheimer's claims for violations of section 1692e of the FDCPA and its dismissal of his action to quiet title.

We concur:

- 14 -