

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-2007

# Abdelfattah v. Dept Homeland

Precedential or Non-Precedential: Precedential

Docket No. 06-4106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Abdelfattah v. Dept Homeland" (2007). *2007 Decisions.* Paper 1020.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1020

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――――

No. 06-4106

―――――――――

OSAMA ABDELFATTAH

v.

U.S. DEPARTMENT OF HOMELAND SECURITY;
MICHAEL CHERTOFF, in his official capacity as
Secretary of the Department of Homeland Security;
MAGDA S. ORIZ, Director of FOIA/PA Branch;
U.S. CITIZENSHIP AND IMMIGRATION SERVICE;
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;
FEDERAL BUREAU OF INVESTIGATION

(District of New Jersey Civil No. 05-cv-05212)

OSAMA ABDELFATTAH

v.

U.S. DEPARTMENT OF HOMELAND SECURITY

(District of New Jersey Civil No. 06-cv-00774)

OSAMA ABDELFATTAH

v.

U.S. DEPARTMENT OF HOMELAND SECURITY;
U.S. CITIZENSHIP AND IMMIGRATION SERVICE;
U.S. IMMIGRATION AND CUSTOM ENFORCEMENT;
FEDERAL BUREAU OF INVESTIGATION

(District of New Jersey Civil No. 06-cv-00775)

OSAMA ABDELFATTAH

v.

U.S. CUSTOMS AND BORDER PROTECTION;
U.S. IMMIGRATION AND CUSTOM ENFORCEMENT

(District of New Jersey Civil No. 06-cv-02203)

Osama Abdelfattah,
Appellant

2

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action Nos. 05-cv-05212,
06-cv-00774, 06-cv-00775 & 06-cv-02203
(Honorable Joseph A. Greenaway, Jr.)

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 27, 2007
Before:  SCIRICA, Chief Judge, FUENTES and SMITH,
Circuit Judges.

(Filed:   May 30, 2007)

Osama Abdelfattah
        Appellant, Pro Se

James B. Clark, III, Esquire
Office of United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102
        Attorney for Appellees

OPINION OF THE COURT

3

<u>PER CURIAM</u>.

Osama Abdelfattah appeals pro se from an order of the United States District Court for the District of New Jersey granting the defendants' motion for summary judgment in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. We will affirm in part, vacate in part, and remand to the District Court for further proceedings. In doing so, we clarify the test, announced in <u>Davin v. United States Department of Justice</u>, 60 F.3d 1043, 1056 (3d Cir. 1995), for evaluating whether material withheld pursuant to FOIA Exemption 7 qualifies as "records or information compiled for law enforcement purposes."

I.

In an effort to obtain records pertaining to himself, Abdelfattah submitted FOIA/PA requests to the United States Citizenship and Immigration Services ("CIS"), the Bureau of United States Customs and Border Protection ("CBP"), the Bureau of United States Immigration and Customs Enforcement ("ICE"), and the Federal Bureau of Investigation ("FBI"). The CIS conducted a search using Abdelfattah's name and located 420 pages of responsive documents. Ultimately, the CIS referred 57 pages to the ICE, released 344 pages in full, released one page with redactions, and withheld 18 pages in full. Of the 57 pages referred to the ICE, 51 were released in full, four were withheld in part, and two were withheld in their entirety. When Abdelfattah filed his complaint against the ICE, that agency had

4

not yet responded to the request submitted directly to it. In response to Abdelfattah's request to the CBP, two pages were determined to be non-responsive and one document was released with certain redactions. The FBI informed Abdelfattah that a search of its automated indices yielded no responsive records at its headquarters.

Beginning in October 2005, Abdelfattah filed a series of complaints in the District Court alleging that his FOIA requests were not timely processed, that the searches were inadequate, and that certain information in the responsive documents was improperly withheld. These actions were eventually consolidated and the parties filed cross motions for summary judgment. The District Court granted the defendants' motion.[1]

---

[1] The District Court did, however, deny that portion of the defendants' motion for summary judgment which requested that the proceedings be stayed pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976), to permit the ICE to complete its processing of Abdelfattah's pending FOIA request. The District Court concluded that the ICE's backlog of pending requests did not amount to "exceptional circumstances," and ordered the ICE to respond to the FOIA/PA request within 20 days. 5 U.S.C. § 552(a)(6)(C)(i)-(iii) (permitting a stay if it can be shown that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."). The ICE has complied with this order, and there is no indication that Abdelfattah challenged the response.

Abdelfattah appeals.

## II.

We employ a two-tiered test in reviewing an order of a District Court granting summary judgment in proceedings seeking disclosure under the FOIA. We must "first decide whether the district court had an adequate factual basis for its determination." McDonnell v. United States, 4 F.3d 1227, 1242 (3d Cir. 1993) (citations omitted). If it did, we "must then decide whether that determination was clearly erroneous." Id. (citations omitted). Under this standard, we will reverse only "if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." Id. (quoting Lame v. U.S. Dep't of Justice, 767 F.2d 66, 70 (3d Cir. 1985)).

## III.

On appeal, Abdelfattah challenges the adequacy of the searches and the sufficiency of the justifications for withholding material pursuant to FOIA Exemptions 5 and 7. See 5 U.S.C. § 552(b)(5) & (b)(7). He also challenges the degree of compliance with the FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b).

## A.

Under the FOIA, an agency has a duty to conduct a reasonable search for responsive records. See Oglesby v. U.S. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The relevant inquiry is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To demonstrate the adequacy of its search, the agency should provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting Oglesby, 920 F.2d at 68).

Abdelfattah alleges the CIS's search was inadequate because it failed to produce records pertaining to his applications for relief (e.g., application for adjustment of status, application for a travel document, application for employment authorization, etc.). The District Court concluded that the detailed affidavits in this case establish that the CIS's search was adequate and "reasonably calculated to uncover all relevant documents." Oglesby, 920 F.2d at 68. We agree. In particular, the affidavit of a paralegal specialist in the CIS FOIA/PA Unit at the National Records Center described Abdelfattah's numerous requests (including the specific file numbers assigned to the relief applications he sought), explained the search terms that were employed, and described the various files that were searched. Among those files was the "Computer Linked Application Information Management System," which is "used

7

to track applications or petitions for benefits filed under the Immigration and Nationality Act."

Abdelfattah further complains the FBI failed to demonstrate the adequacy of its search.[2]  In October 2005, Abdelfattah submitted a FOIA/PA request to the FBI.  The FBI informed him that a search of its automated indices to its central records system files at its headquarters located no responsive records.    After exhausting his administrative remedies, Abdelfattah filed a complaint challenging the adequacy of the FBI's search, asserting that records must exist because he had been interviewed by FBI agents in July 2004.  The FBI did not submit an affidavit describing its search.  See Valencia-Lucena, 180 F.3d at 326 (describing information necessary to demonstrate adequacy of search).  The District Court thus had no factual basis for its determination that the "FBI has satisfied its FOIA obligations to Plaintiff."   See McDonnell, 4 F.3d at 1242.  Accordingly, we will remand for further proceedings on this issue.  Oglesby v. U.S. Dep't of Army, 79 F.3d 1172, 1185-87 (D.C. Cir. 1996) (remanding where agencies failed to justify the adequacy of their searches).

## B.

Abdelfattah further contends the declarations and Vaughn

---

[2]To the extent that Abdelfattah contends that the FBI is withholding six documents that were referred to it by the CIS, the District Court correctly concluded that no such referral was made.

index[3] submitted by the defendants in support of their motion for summary judgment were inadequate. Specifically, he claims that those submissions (1) failed to adequately justify the ICE's withholding of a draft incident report pursuant to Exemption 5; (2) did not demonstrate that records located by the CIS and the CBP met the threshold for Exemption 7 that was established by this Court in Davin;[4] and (3) omitted any indication that the CIS had disclosed all reasonably segregable information.

---

[3]A Vaughn index is designed to "transform a potentially ineffective, inquisitorial proceeding against an agency that controls information into a meaningful adversarial process" by identifying each document withheld, the statutory exemption claimed, and a particularized description of how each document withheld falls within a statutory exemption. Coastal States Gas Corp. v. Dep't of Energy, 644 F.2d 969, 984 (3d Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The justification for withholding provided by the agency in a Vaughn index may take any form as long as the agency offers a "reasonable basis to evaluate [it]s claim of privilege." Gallant v. NLRB, 26 F.3d 168, 172-73 (D.C. Cir. 1994) (quoting Delaney, Migdall & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987)).

[4]Because the CBP has indicated that the page from which it redacted material is "substantially similar" to a page withheld by the CIS, we will not separately examine the CBP's response to Abdelfattah's FOIA/PA request.

1.

After reviewing the record in its entirety, including the ICE's affidavit, we conclude that the District Court possessed a sufficient factual basis for its determination that the ICE properly used Exemption 5 to withhold a draft incident report. Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The Exemption encompasses the traditional discovery privileges, including the deliberative process privilege, which "protects agency documents that are both predecisional and deliberative." Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006); see also Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). The ICE indicated that the draft report involved discussions "between [the agency's] subordinates and seniors" and noted that the report "may have been modified to ensure accurate reporting and clarify misleading statements." Moreover, there is no indication in the record that the draft report was expressly adopted as, or incorporated by reference into, the ICE's final decision. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975) (holding that "if an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5.").

2.

Abdelfattah also contends the CIS failed to sufficiently justify its use of Exemption 7. Under the present version of Exemption 7, which was enacted in 1986, agencies may withhold "records or information compiled for law enforcement purposes" to the extent that disclosure threatens (to varying degrees of certainty) one of six enumerated harms. See 5 U.S.C. § 552(b)(7). With respect to the first part of this analysis – whether the record or information was compiled for law enforcement purposes – this Court has stated that a criminal law enforcement agency must first "identify a particular individual or incident as the object of the investigation and specify the connection of the individual or incident to a potential violation of law or security risk." Then the agency must "demonstrate that this relationship is based upon information sufficient to support at least a 'colorable claim' of its rationality." Davin, 60 F.3d at 1056 (internal quotation omitted).

This test is "an adaptation of the two-prong 'rational nexus' test articulated by the Court of Appeals for the District of Columbia Circuit" in Pratt v. Webster, 673 F.2d 408 (D.C. Cir. 1982).[5] Davin, 60 F.3d at 1056. When Pratt was decided

_____

[5]The Pratt test asks (1) whether the agency's investigatory activities that give rise to the documents sought are related to the enforcement of federal laws or to the maintenance of national security; and (2) whether the nexus between the investigation and one of the agency's law enforcement duties is based on

11

in 1982, Exemption 7 protected "investigatory record[s] compiled for law enforcement purposes." But amendments to the FOIA in 1986 modified the Exemption 7 threshold requirement by deleting the word "investigatory" and inserting the words "or information," so that protection is now available to all "records or information compiled for law enforcement purposes." Thus, while the 1986 FOIA amendments did not affect that portion of the Pratt test which requires a "nexus" between the agency activity giving rise to the records and its law enforcement duties, see Davin, 60 F.3d at 1055, the amendments did broaden the sweep of the exemption's coverage. See Tax Analysts v. IRS, 294 F.3d 71, 79 (D.C. Cir. 2002) (explaining that 1986 FOIA amendments permitted wider application of Exemption 7 by deleting "any requirement" that information be investigatory); see also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987).

Thus, we are faced with a statute which protects all "records or information compiled for law enforcement purposes," and a test set forth in Davin under that statute which appears to impose on the government additional requirements for withholding, namely, identification of a particular individual or incident, an investigation, and a potential violation of law or security risk. In the present case, Abdelfattah requested information pertaining to himself that is maintained by the CIS, an agency that is responsible for performing various

information sufficient to support at least a colorable claim of rationality. Pratt, 673 F.2d at 420-21.

12

immigration adjudications (e.g., visa petitions and asylum applications). See 6 U.S.C. § 271(b) (setting forth functions of the CIS). Under <u>Davin</u>, any records maintained by the CIS concerning Abdelfattah's applications for immigration relief arguably would not be covered by Exemption 7 because they do not relate to an "investigation" or a "potential violation of law."

Importantly, however, we interpret as dicta that portion of the <u>Davin</u> test which refers to the identification of a particular individual or incident as the object of an investigation into a potential violation of law or security risk. In <u>Davin</u>, the requester sought from the FBI records pertaining to a national union for the unemployed and its one-time leader. With respect to Exemption 7, the <u>Davin</u> Court was concerned primarily with whether it should adopt a per se rule "under which all records compiled by law enforcement agencies . . . qualify as 'records compiled for law enforcement purposes'" or whether it should require the agency to establish a rational nexus between the activities giving rise to the requested records and its law enforcement duties. <u>Davin</u>, 60 F.3d at 1054-56. Adoption of a per se rule in <u>Davin</u> would have resulted in a conclusion that the records requested from the FBI, which is a law enforcement agency, fell within Exemption 7's threshold. Instead, however, the <u>Davin</u> Court chose to apply the rational nexus test, thereby requiring the FBI to articulate a connection between the responsive documents and a legitimate law enforcement concern. <u>Id.</u> at 1056-57. Therefore, rejection of the per se rule and application of the rational nexus test dictated the result in <u>Davin</u>. By contrast, the <u>Davin</u> Court was not presented with the

13

question whether the proper invocation of Exemption 7 depended on the presence of an investigation because it was clear that an investigation had given rise to the responsive documents. See Davin, 60 F.3d at 1056. Accordingly, because the investigation requirement of the Davin test "could have been deleted without seriously impairing the analytical foundations of the holding," the requirement is dicta. In re McDonald, 205 F.3d 606, 612 (3rd Cir. 2000) (quoting Sarnoff v. American Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir. 1986)); Cf. United States v. Luiz, 102 F.3d 466, 469 (11th Cir. 1996) (holding that first requirement of three-part test was dicta because, under the facts of the case announcing the test, the first requirement had been met). While "[i]t is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels," Internal Operating Procedure 9.1, it is also well established that we are not bound by dictum in an earlier opinion. See Mariana v. Fisher, 338 F.3d 189, 201 (3d Cir. 2003).

As noted, the 1986 FOIA amendments broadened the applicability of Exemption 7 by expressly removing the requirement that the records be "investigatory." See Tax Analysts, 294 F.3d at 79 (noting that "legislative history [of the 1986 FOIA amendments] makes it clear that Congress intended the amended exemption to protect both investigatory and non-investigatory materials"). Thus, under the plain language of the statute, we conclude that an agency seeking to invoke Exemption 7 does not have to identify a particular individual or incident as the object of an investigation into a potential

14

violation of law or security risk.  See Keys, 830 F.2d at 340 (stating that "Pratt requires simply that the nexus between the agency's activity (under the old scheme, an 'investigation') and its law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality") (internal quotation marks omitted); North v. Walsh, 881 F.2d 1088, 1098 n.14 (D.C. Cir. 1989) (stating that "Congress also changed the threshold requirement for withholding information under exemption 7: the exemption formerly covered 'investigatory records compiled for law enforcement purposes'; it now applies more broadly to 'records or information compiled for law enforcement purposes.'").  Our research has not disclosed any contrary appellate decisions.

We emphasize, however, that Exemption 7 still requires an agency to demonstrate that the relationship between its authority to enforce a statute or regulation and the activity giving rise to the requested documents is based upon information sufficient to support at least a colorable claim of the relationship's rationality.  See Davin, 60 F.3d at 1056.  "[S]imple recitation of statutes, orders and public laws is an insufficient showing of a rational nexus to a legitimate law enforcement concern."  Id.  In this case, the CIS has not identified any connection between its law enforcement authority and the information contained in the withheld material.  Indeed, in describing the "Reason for Withholding," the CIS's Vaughn index merely notes that the documents were "compiled for law enforcement purposes" without providing any further detail or explanation.  While the descriptions of some of the withheld

15

documents arguably suggest that they were compiled for law enforcement purposes, we will not extrapolate such a purpose solely based on those brief summaries or on the CIS's description of the databases that it searched.[6] See Church of Scientology of California v. U.S. Dep't of Army, 611 F.2d 738, 749 (9th Cir. 1979) (remanding where agency provided insufficient evidence to justify use of Exemption 7).

3.

Notably, even if the CIS's application of FOIA exemptions was substantively correct, we would nevertheless remand because the CIS failed to demonstrate that it has released all reasonably segregable portions of each withheld document. 5 U.S.C. § 552(b) (requiring that "[a]ny reasonably

---

[6]According to the CIS, it searched "a computer system designed to track the location of receipts and alien files within designated offices," "a computer system used to track applications or petitions for benefits filed under the Immigration and Nationality Act," and a system that "provides automated information regarding certain classes of aliens and identifies the location of an alien's hardcopy A-file." The withheld information consisted of seven "Facsimile Transmittal [or Confirmation] Cover Sheets," two "record check report[s]," two memoranda (including one regarding an "investigation"), two emails, one "record of IBIS query," one "NAIL lookout contact/comments ADD," and a three-page "TECS II Person Subject Display."

16

segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt"). An "agency cannot justify withholding an entire document simply by showing that it contains some exempt material." Mead Data Central v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). Rather, the agency must demonstrate that all reasonably segregable, nonexempt information was released. See Davin, 60 F.3d at 1052 ("The statements regarding segregability are wholly conclusory, providing no information that would enable [plaintiff] to evaluate the FBI's decisions to withhold."). The CIS's declarations and Vaughn index provided no basis for the District Court to make a "reasonably segregable" finding. Indeed, there is no description of the agency's process for making such a determination, no factual recitation of why certain materials are not reasonably segregable, and no indication of "what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." Mead Data Central, 566 F.2d at 261. The absence of this information necessitates a remand to the District Court to make a specific segregability finding with respect to the CIS. See Kimberlin v. Dep't of Justice, 139 F.3d 944, 950 (D.C. Cir. 1998) (remanding because District Court did not make findings regarding segregability).

## IV.

For the foregoing reasons we will affirm in part, vacate in part, and remand the matter to the District Court for further

17

proceedings consistent with this opinion. In particular, we will vacate that portion of the District Court's order which granted summary judgment concerning the FBI's search for responsive documents, the applicability of Exemption 7 to records withheld by the CIS, and the CIS's satisfaction of its obligation to demonstrate that all reasonably segregable information has been disclosed. In all other respects, we will affirm the judgment of the District Court.