
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RUSSELL MARTIN, | ) | No. 38542-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CITY OF LAKEWOOD, a Washington governmental entity, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

JOHNSON, J.[*] — The Public Records Act (PRA), chapter 42.56 RCW, requires

governmental agencies to make an adequate investigation when responding to a request

for public records. An agency's investigation is adequate when it is reasonably calculated

to uncover all relevant documents. Here, Lakewood Police Officer Russell Martin filed a

lawsuit under the PRA alleging the City of Lakewood failed to provide a document

relevant to one of his two requests for public records. The City responded by filing a

motion for summary judgment that was granted by the superior court. Martin appeals.

Because the superior court erred by summarily dismissing Martin's case when the

---

[*] Judge Brandon L. Johnson is serving as judge pro tempore of the Court of
Appeals pursuant to RCW 2.06.150.

undisputed facts show the City failed to produce a document related to Martin's request,

we reverse, hold that Martin is entitled to summary judgment for violation of the PRA,

and remand for further proceedings.

FACTS

*Background*

In 2019, the Lakewood Police Department conducted two separate, but related,

investigations into officers following allegations of dishonesty and misconduct. CP 98,

102, 162. The first, labeled 2019-PSS003 (PSS003),[1] involved a single officer being

investigated for dishonesty. The second investigation, labeled 2019-PSS004 (PSS004),

involved Officer Jeremy Vahle and Officer Russell Martin (Martin). Vahle and Martin

were being investigated for failing to report the alleged dishonesty of the officer in the first

investigation.

In the second investigation, allegations against Vahle were sustained. Prior to his

*Loudermill*[2] hearing, Vahle was provided with a thumb drive containing documents

related to the investigation into his conduct. Included on the thumb drive was an

---

[1] PSS stands for "Professional Standards Section," which is a division of the Lakewood Police Department.

[2] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

2

interview with Sergeant Charles Porche, the supervisor of the officer who was the subject

of the first investigation.

*Martin's PRA requests*

After the conclusion of the investigations, Martin made two public records

requests to the City. First, Martin requested records related to the second investigation,

specifically, "[a]ll documents and recordings related to [PSS004]." Clerk's Papers (CP)

at 58. Second, approximately a month later, Martin made the following request related to

the first investigation: "All documents and recordings related to [PSS003]." CP at 31.

The City responded to both of Martin's requests, providing him with the

responsive documents and redacting information determined to be exempt from

disclosure. In response to his request for documents and recordings related to PSS004,

Martin received the following files:

- Jeremy-Vahle-2019PSS-004.mp4

- Russ-Martin-2019PSS-004.mp4

- Suver-2019PSS-003---004.mp4

- Suver-re-interview-2019PSS-004.mp4

- Vahle determination.pdf

- 2019PSS-004-redacted.pdf

CP at 14. The provided documents contained references to the PSS003 investigation, including two employee statements that were labeled as being related to both PSS003 and PSS004. Upon providing Martin with the documents, the City informed him that it considered his first request relating to PSS004 closed.

In response to Martin's request for files related to PSS003, Martin received, among other records, the video recording of the Porche interview labeled, "Porche-witness-interview- 2019PSS003---004.mp4." CP at 14. The employee statement signed by Porche stated that he was being interviewed "as part of an internal investigation under PSS Control # 003 & 004." CP at 130. The interview, however, had not been included in the City's response to the PSS004 request. Otherwise, though, there was a certain amount of overlap between records provided in response to the PSS003 and the PSS004 requests.[3]

There was no further communication between Martin and the City following the City's responses.

---

[3] Certain documents provided were not labeled but provided in response to both requests. Other documents were labeled as belonging to both investigations but only provided in response to one of the requests. One document was labeled in its file name as belonging to both investigations and was provided in response to both requests.

*Martin's PRA lawsuit*

Approximately seven months after the City responded, Martin filed a complaint for disclosure of public records.  In the complaint, Martin alleged that the City had withheld documents in response to his public records request for documents related to PSS004. The complaint did not specify which records Martin was claiming had been wrongfully withheld.

When it learned of Martin's lawsuit, the City reached out to Martin asking for information about what records he believed had been withheld.  Based on a conversation with Martin's attorney, the City opened a new public records request in an effort to provide Martin with the documents he had claimed were withheld.

*Summary judgment*

Several months after Martin brought his lawsuit, the City filed a motion for summary judgment.  The City argued it had properly searched for and provided the records requested and had made substantial efforts after the lawsuit was filed to ensure that Martin had received the records requested.

In support of its motion, the City provided a declaration from Svea Pitts, the individual who had responded to both of Martin's requests.  She said that when Martin requested documents related to the PSS004 investigation, she "believed . . . he wanted that

5

particular file" and apparently provided only those documents. CP at 279. Pitts also

provided information regarding the record-keeping process of the police department:

> The [PSS] conducts internal investigations and the files created are labeled
> PSS with the date and a number, kept in chronological order. Because these
> investigations are usually sensitive matters, no documents related to any
> PSS investigation are kept outside of Professional Standards Section. The
> hard copy records are kept [ ] in a locked closet down our secure hallway.
> The electronic copies are kept in IAPRO which is our internal software
> program for cases involving [Lakewood Police Department] employees.

CP at 41. Pitts stated that she had uploaded the records that had been sent to Martin to the

website used for responding to public records requests. After she learned of the lawsuit,

Pitts re-checked for responsive records in both the stored physical documents as well as

the electronic database. She noted that although the interview of Porche was referenced

in the PSS004 file, it was physically located in the PSS003 file. However, Pitts changed

this statement in a subsequent declaration, saying that the interview was neither

summarized nor referenced in the PSS004 file and that it was physically located only in

the PSS003 file because it was used only in that investigation.

The City also supported its motion for summary judgment by arguing it had

provided all records "related" to the investigation files, and after doing so, it received no

further communication from Martin. The City maintained that there had been no

violation of the PRA because, prior to filing the action, Martin had been provided all of the records he had been entitled to receive.

On the day of the scheduled hearing on the motion for summary judgment, Martin requested a continuance for medical reasons. Martin also filed a response the same day, in which he argued the City had failed to provide all the responsive documents to the first request, and that the search conducted by Pitts was inadequate. Over the City's objection, the superior court continued the hearing.

After 4:00 p.m. the day before the continued hearing on the motion for summary judgment, Martin filed a declaration from Vahle in response to the City's reply that had been filed approximately a week prior. In his declaration, Vahle stated that prior to his *Loudermill* hearing, he had received an e-mail from Pitts informing him that she was retrieving the records "associated with [his PSS004] investigation" that included the interview of Porche in a file named "IA 2019-PSS004." CP at 282.

At the outset of the hearing, the City moved to strike Vahle's declaration arguing that it was untimely, did not comport with state and local rules, and was irrelevant. In response, the superior court said that it was not aware of the existence of such a declaration and that it had not read it. Martin argued that the declaration was relevant and that he had not been able to file it earlier due to difficulties coordinating with Vahle.

7

The trial court never ruled on the City's motion to strike, but did allow Martin to describe the contents of the declaration and rely on it in his argument. The trial court itself referenced the declaration in its oral ruling saying that it was "completely irrelevant to the [summary judgment issue]" because the documents were provided in the context of a *Loudermill* hearing and not a public records request. Report of Proceedings (RP) (Jul. 2, 2020) at 29.

The City never addressed the details of the actual contents of Vahle's declaration, instead maintaining throughout the hearing that the declaration should be either struck or that its contents were irrelevant.

The superior court granted the City's motion for summary judgment. Martin appeals.[4] A Division Three panel considered Mr. Martin's appeal with oral argument after receipt of an administrative transfer of the case from Division Two.

## ANALYSIS

"The PRA is a strongly worded mandate for broad disclosure of public records." *Dotson v. Pierce County*, 13 Wn. App. 2d 455, 468, 464 P.3d 563 (2020). The PRA is "liberally construed and its exemptions narrowly construed." RCW 42.56.030.

---

[4] By agreement of the chief judges, Division Two of this Court transferred this appeal to Division Three pursuant to CAR 21(a) and RAP 4.4.

Under the PRA, governmental agencies must "make available for public inspection and copying all public records, unless the record falls within specific exemptions." *Rental Housing Assn of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009) (quoting RCW 42.56.070(1)). The PRA creates a cause of action if an agency wrongfully denies a requester an opportunity to inspect or copy a public record. RCW 42.56.550(1). Where a party claims that it has been wrongfully denied access to a public record by an agency in violation of the PRA, the burden of proof is on the agency to establish that it has acted in accordance with the statute. RCW 42.56.550.

Where an agency violates the PRA by failing to provide a public record, subsequent provisions of the record wrongfully withheld does not protect the agency from liability. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 726-27, 261 P.3d 119 (2011). The harm occurs at the time the record is withheld. *Id.* "[T]he remedial provisions of the PRA are triggered when an agency fails to properly disclose and produce records, and any intervening disclosure serves only to stop the clock on daily penalties, rather than to eviscerate the remedial provisions altogether." *Id.* at 727.

The fact that a requested record contains a reference to another record does not mean that an agency is required, under the PRA, to include the additional record in the response. *Dotson*, 13 Wn. App. 2d at 466. However, when responding to a request under

9

the PRA, an agency must conduct an adequate search. *Neighborhood Alliance*, 172

Wn.2d at 721. There is no bright line definition for what constitutes an adequate search,

but rather:

> [T]he focus of the inquiry is not whether responsive documents do in fact
> exist, but whether the search itself was adequate. *The adequacy of a search
> is judged by a standard of reasonableness, that is, the search must be
> reasonably calculated to uncover all relevant documents. What will be
> considered reasonable will depend on the facts of each case. . . .*
>   Additionally, agencies are required to make more than a perfunctory
> search and to follow obvious leads as they are uncovered. The search
> should not be limited to one or more places if there are additional sources
> for the information requested. Indeed, 'the agency cannot limit its search to
> only one record system if there are others that are likely to turn up the
> information requested.' This is not to say, of course, that an agency must
> search every possible place a record may conceivably be stored, but only
> those places where it is reasonably *likely* to be found.

*Id*. at 719-20 (some emphasis added) (citations omitted).

This court reviews questions of statutory interpretation and allegations of agency

violations of the PRA de novo. *Id*. at 715.

Summary judgment is also reviewed de novo. *Id*. Summary judgment is

appropriate where "there is no genuine issue as to any material fact and . . . the moving

party is entitled to a judgment as a matter of law." CR 56(c). If "the record on appeal

consists solely of declarations or other documentary evidence, [this court] stands in the

same position as the trial court" and does not make determinations as to credibility.

10

*Service Emps. Int'l Union Local 925 v. University of Wash.*, 193 Wn.2d 860, 866, 447

P.3d 534 (2019).

Martin argues that the trial court erred in granting the City's motion for summary

judgment. The City argues there was no genuine issue of material fact as to whether the

PRA had been violated. However, examination of the record reveals the undisputed facts

show the City violated the PRA as a matter of law by failing to conduct an adequate

search and by not providing the undeniably related interview of Porche in response to the

PSS004 request.

The City appears to take the position that its obligation to search for records

extended no further than the physical file for the PSS004 investigation. However, this

position fails when one appreciates the significant overlap between the PSS003 and

PSS004 investigations. The subject matters were intertwined, and both investigation files

contained several of the same documents. The actions of Pitts herself demonstrated this

overlap when she provided Vahle with Porche's interview as a file "associated with" the

PSS004 investigation, although it was purportedly only contained in the PSS003 file, to

aid him in preparing for his *Loudermill* hearing. Additionally, multiple documents were

labeled, either by their file name or within the document itself, as belonging to both

investigations. This duplicative labeling of multiple documents between the two

11

investigations shows that a search reasonably calculated to uncover all responsive documents should have been broadened to include both files. The "perfunctory search" performed by the City failed to follow the "obvious lead[ ]" of the PSS003 file, and therefore was not reasonable. *Neighborhood Alliance*, 172 Wn.2d at 720.

The labeling of the documents also indicated that some of the documents, including Porche's interview, were intended to have been actually located in the PSS004 file but were inadvertently left out or misfiled. It is evident from the provided records that there was likely a standard convention for naming files that included putting the investigation number the files belonged to at the end of the file name. The file containing Porche's interview provided in response to the second request was labeled in part "2019PSS003---004," indicating it was part of the PSS003 file as well as the PSS004 file. CP at 14. Additionally, the file containing the same Porche interview provided to Vahle was labeled in part "PSS004," also showing it was part of, or at a minimum related to, the PSS004 file. Moreover, the employee statement signed by Porche said he was being interviewed "as part of an internal investigation under PSS Control # 003 & 004," indicating the interview was part of the PSS004 file. In fact, two other employee statements were similarly designated as being related to both investigations and were included in response to the PSS004 request.

12

Although the City offered declarations stating that Porche's interview was only part of the PSS003 investigation, this ignores the fact that Martin's request was for documents "related to" the PSS004, not merely those *included in* the file. The City's reading of Martin's request is simply too narrow. At a minimum, the joint labeling of multiple documents demonstrates that the two investigations were so closely related that a reasonable search for records related to PSS004 must have included the PSS003 file to ensure that documents intended to be located in both files were actually compiled and provided in response to a PRA request related to PSS0004.

The superior court relied on the *Dotson* case to support its ruling that the City need not have searched outside of the PSS004 file simply because the PSS003 file was referenced in some of the documents in the PSS004 file. The application of *Dotson* to the facts of this case was overstated. It is true that, under *Dotson*, the mere fact that the PSS003 investigation was referenced in the PSS004 investigation file did not, by itself, require the City to include all the documents in the PSS003 file in response to the PSS004 request. 13 Wn. App. 2d at 466. However, the record in *Dotson* clearly established that there was no substantive relationship between the two files. Here, as discussed above, there was a substantial overlap between the two investigations.

13

The superior court essentially made factual findings by determining the Vahle

declaration was "totally irrelevant." It was improper for the court to make such a factual

determination without the benefit of an evidentiary hearing with testimony, and was,

moreover, a violation of the applicable standard for evaluating motions for summary

judgment. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 677, 880 P.2d 988 (1994) ("When

reviewing a motion for summary judgment, the court considers all facts submitted and all

reasonable inferences from the facts in the light most favorable to the nonmoving party.").

Whether or not the Porche interview was substantively used in the underlying

PSS004 investigation, for which the City asserts it was not, is not the appropriate test.

Whether it was ultimately used in the investigation does not determine whether it was

"related" to the investigation. Martin's request cannot be read so narrowly as to only seek

documents that the City deems were substantially used in the investigation.[5]

---

[5] Additionally, the City argues that prior to the commencement of this action, Martin had received all the records he claims he was entitled to as part of his second request, and because he was provided all relevant records, Martin cannot sustain an action under the PRA. Br. of Resp't at 14. However, any violation of the PRA occurs when a record is wrongly withheld, and while subsequent provision of that record may be relevant to potential penalties, it does not negate the City's liability. *Neighborhood Alliance*, 172 Wn.2d at 726-27.

No. 38542-6-III
*Martin v. City of Lakewood*

CONCLUSION

The Porche interview was a document "related to" the PSS004 investigation as a matter of law based on the undisputed evidence before the superior court. The City violated the PRA when it failed to conduct an adequate search for responsive records and then failed to produce the Porche interview. Accordingly, we reverse the superior court's granting of the City's motion for summary judgment, hold that the City violated the PRA by not producing the Porche interview, and remand to the superior court for calculation of the appropriate penalty pursuant to the factors set forth in *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Johnson, J.P.T.

I CONCUR:

_____
Pennell, J.

15

No. 38542-6-III

FEARING, J. (concurring) — I join in the majority's ruling that directs summary judgment in favor of Russell Martin. I write separately to register my view that the Public Records Act (PRA), chapter 42.56 RCW, imposes no free-standing duty on a government agency to perform an adequate search for requested records. I will refer to this ostensible duty as the reasonable search or adequate search rule. My view conflicts with current Court of Appeals jurisprudence. Under my contrarian perspective, a court may not grant a public records requester relief for any inadequate search by itself.

In a bygone era of legal ease, when practitioners could not cite unpublished opinions as authority, I might not write this concurrence. Now that, under GR 14.1, legal writers may cite unpublished opinions as holding persuasive value, I do not wish to be branded as a supporter of the adequate search rule. The rule conflicts with the letter of and policy behind the PRA.

I begin with standard and familiar language heralding the purposes behind Washington's PRA. The PRA promotes open government. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 719, 261 P.3d 119 (2011). The PRA seeks to increase governmental transparency and accountability by making public records accessible to Washington citizens. *John Doe A v. Washington State Patrol*, 185

Wn.2d 363, 371, 374 P.3d 63 (2016). These objectives partially motivate my rejection of the Washington reasonable search rule.

The operative provision of the PRA reads:

> Each agency, in accordance with published rules, *shall make available for public inspection and copying all public records*, unless the record falls within the specific exemptions of subsection (8) of this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records.

RCW 42.56.070(1) (emphasis added). This section of the PRA seeks to render virtually every document generated by an agency available to the public unless an exemption applies. *Ameriquest Mortgage Co. v. Office of the Attorney General*, 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013); *Rental Housing Association of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

The PRA creates a private cause of action for a requester when the government agency fails to produce, in accordance with RCW 42.56.070(1), a public record not subject to an exemption. RCW 42.56.550 declares:

> (1) Upon the motion of any person *having been denied an opportunity* to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.
> . . . .

2

> (4) Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

(Emphasis added.)

RCW 42.56.070(1), RCW 42.56.550, and all other sections of the PRA levy no burden on a government agency to reasonably search for records. Creating such an obligation violates principles of statutory construction. Courts may not read into a statute a meaning that is not there. *Burton v. Lehman*, 153 Wn.2d 416, 422-23, 103 P.3d 1230 (2005). When interpreting a statute, we must not add words when the legislature has chosen not to include them. *Lake v. Woodcreek Homeowners Association*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

The majority correctly notes that Washington decisions, despite the absence of statutory language demanding any form of a records search, promote the adequate search rule. The Washington Supreme Court wrote in *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 719 (2011), that the court focuses on the adequacy of a search, not whether responsive documents exist but were not disclosed or produced. Accordingly, a search need not be perfect, only adequate. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 720 (2011). The

3

Supreme Court compared an inadequate search to the denial of production of a record. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 721 (2011).

Despite its discussion of a reasonable search, the Washington Supreme Court, in *Neighborhood Alliance*, recognized that the PRA falls silent about what constitutes an adequate search. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 719 (2011). The high court should have added that the PRA also does not read that an agency holds an obligation to conduct a reasonable search.

The Washington Court of Appeals has followed the language from *Neighborhood Alliance* and adopted a rule that the PRA requires a government agency to conduct an adequate search in response to a public records request. *Rufin v. City of Seattle*, 199 Wn. App. 348, 356, 398 P.3d 1237 (2017); *Block v. City of Gold Bar*, 189 Wn. App. 262, 266, 355 P.3d 266 (2015); *Hobbs v. State*, 183 Wn. App. 925, 943, 335 P.3d 1004 (2014); *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012). The Supreme Court restated, but did not apply, the reasonable search rule in *Nissen v. Pierce County*, 183 Wn.2d 863, 885, 357 P.3d 45 (2015).

Contrary to analysis by the Washington Court of Appeals and the Supreme Court's passing remark in *Nissen v. Pierce County*, the Supreme Court, in *Neighborhood Alliance*, did not hold that an inadequate search forms an independent cause of action. The court instead reserved for another day the question of whether the PRA authorizes a

4

penalty if the requester would otherwise have no remedy for an unreasonable search. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 724 (2011). The court, in *Neighborhood Alliance*, limited its holding to characterizing an inadequate search as an aggravating factor to be considered in setting the daily penalty amount.

The Washington PRA closely parallels the federal Freedom of Information Act (FOIA), and thus judicial interpretations of the federal act usually assist in construing our own act. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 129 (1978). In *Neighborhood Alliance*, the Washington Supreme Court followed federal decisions that impose an enforceable duty, under FOIA, on federal agencies to conduct an adequate search. Some of those decisions now include *Rojas v. Federal Aviation Administration*, 927 F.3d 1046, 1052-53 (9th Cir. 2019), *superseded on reh'g*, 989 F.3d 666; *Ancient Coin Collectors Guild v. U.S. Department of State*, 641 F.3d 504, 514 (D.C. Cir. 2011); *Trentadue v. Federal Bureau of Investigation*, 572 F.3d 794 (10th Cir. 2009); *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353 (4th Cir. 2009); *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235 (11th Cir. 2008); *Abdelfattah v. U.S. Department of Homeland Security*, 488 F.3d 178 (3rd Cir. 2007); *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473 (2d. Cir. 1999); *Patterson v. Internal Revenue Service*, 56 F.3d 832 (7th Cir. 1995); *Miller v. U.S. Department of State*, 779 F.2d 1378 (8th Cir. 1985).

The imposition of an enforceable duty to search makes sense under FOIA because the federal act expressly imposes such an onus on the government agency. 5 U.S.C. § 552(a)(3) declares:

> (A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.
> . . . .
> (C) In responding under this paragraph to a request for records, an agency *shall make reasonable efforts to search* for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system.
> (D) For purposes of this paragraph, the term "search" means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.

(Emphasis added.) To repeat my theme, the Washington PRA admits no such language regarding a search. Thus, Washington should not adopt the federal view. Washington courts do not adopt the construction placed on a similar federal statute if the language of the statute in Washington substantially differs from the language in the United States statute. *Everett Concrete Products, Inc. v. Department of Labor & Industries*, 109 Wn.2d 819, 826, 748 P.2d 1112 (1988).

Advocates of government transparency may welcome an adequate search rule as effectuating the values behind the PRA. Unfortunately, however, the opposite result has ensued. The Washington Court of Appeals has contorted and distorted the supposed duty

6

of an adequate search into a gift of immunity from liability when the agency conducts a reasonable search but fails to produce an extant document. Thus, even if the public records requester establishes that the government agency failed to produce a record identified by him or her, the court grants the agency safe harbor if the court deems the agency performed a reasonable search. Thrice, this court has affirmed summary judgment dismissal of PRA claims because of an adequate search despite evidence that the government agency failed to produce one or more requested record. *Rufin v. City of Seattle*, 199 Wn. App. 348 (2017); *Block v. City of Gold Bar*, 189 Wn. App. 262 (2015); *Hobbs v. State*, 183 Wn. App. 925 (2014). In the end, the reasonable search rule has caused more harm than good to the public.

Contrary to *Rufin v. City of Seattle*, *Block v. City of Gold Bar*, and *Hobbs v. State*, no Washington statute grants immunity when the government agency fails to disclose a record or produce an unexempted document. Instead, RCW 42.56.550 affords the requester a cause of action for any failure to produce unexempted records, and the statute grants the superior court discretion to impose sanctions up to $100 per day for a violation.

The adequate search rule conflicts with other principles pronounced by the Washington Supreme Court. Withholding a nonexempt document constitutes wrongful withholding and violates the PRA. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010). Even according to the Supreme Court, in *Neighborhood Alliance of Spokane County v. Spokane County*, agencies must disclose any public record on request unless

7

the record falls within a specific, enumerated exemption. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 714-15 (2011).

I recognize that a regulation adopted by the Washington Attorney General, WAC 44-14-04003(10), imposes on a government agency an obligation to "conduct an objectively reasonable search for responsive records." Nevertheless, regulations inconsistent with or broader than a statute they implement are invalid. *Washington State Hospital Association v. Department of Health*, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015); *Center for Biological Diversity v. Department of Fish & Wildlife*, 14 Wn. App. 2d 945, 967, 474 P.3d 1107 (2020). When statutory language is plain and unambiguous, a court will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of a contrary interpretation by an administrative agency. *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005); *Bravo v. Dolsen Companies*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995).

To fulfill the purpose behind the PRA, a government agency should be held liable for failing to produce a requested record regardless of the extent of the search performed by the agency. The PRA seeks to make all records available for review and reading by the public, not just those records that the government agency finds with a reasonable search. The public deserves access to public records no matter the difficulty behind a search. We must interpret the PRA liberally and in light of the people's insistence that they have information about the workings of the government they created. Imposing

strict liability on the agency for failure to produce a record will encourage agencies to exert proactive steps to catalogue records into a system that facilitates the ready production of all records on hand.

I concede an anomaly could arise under my dismissal of the adequate search rule. A government agency could fail to conduct an adequate search but fortuitously produce all records requested. In such an instance, any reasonable search rule would serve no purpose in penalizing the agency since it fulfilled the PRA by producing all demanded documents.

I agree that a duty to reasonably search may facilitate the production of records requested. Also, unless the government agency conducts a reasonable search, the requester may never know whether the agency produced all requested documents. Going further, the government agency may need to detail the actions taken pursuant to a public records search in order to show the reasonableness of the search and to convince the court that it produced all requested documents. For this reason, the imposition of an unattached duty, outside the confines of a duty to produce the records sought, will usually lack any consequence in discrete cases.

Instead of shielding the government agency from liability for failing to produce a requested record, the adequacy of the search should influence the penalty to be imposed by the superior court in the event the government agency fails to produce a record. In *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 467-68, 239 P.3d 735 (2010), the

9

No. 38542-6-III
*Martin v. City of Lakewood* (concurrence)

Supreme Court outlined seven mitigating and nine aggravating factors for a superior court to consider when imposing a daily penalty. The aggravating factors generally form a reverse image of the mitigating factors. None of the mitigating factors explicitly mention the adequacy of the search as a factor, but the reasonableness of the search would fall within the abating categories of an agency's good faith, honest, timely and strict compliance with PRA procedures; the helpfulness of the agency to the public records requester; and the existence of agency systems to track and retrieve public records. The Washington Supreme Court recognized this limited approach to the relevance of an inadequate search in its seminal decision, *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 724 (2011).

In Russell Martin's appeal, the majority holds that Martin is entitled to summary judgment because, under the undisputed evidence, the City of Lakewood failed to conduct an adequate search for responsive records and then failed to produce the Porche interview. The majority could and should rest this holding on the sole ground that Lakewood failed to produce a document requested.

I CONCUR:

_____
Fearing, J.

10